### Ex Parte Frank McCloskey.

#### No. 4773. Decided November 28, 1917.

#### Rehearing denied January 16, 1918.

#### 1.—Barratry—Statutes Construed—Constitutional Law.

The Act of March 29, 1917, amending article 421 of the Penal Code, so as to include the fomenting of litigation for profit, by any person in addition to the attorneys at law, by soliciting the employment or advancing money, etc., or who practice law without license, and further defining barratry, is valid and constitutional.

#### 2.—Same—Case Stated—Barratry—Person not Attorney at Law.

Where relator, who was not an attorney at law, solicited another person who was injured in an automobile wreck to permit him to prosecute and present, and to collect his claim against the party against whom he entered such claim, and also solicited another party to employ him to present and collect an open account against another party, etc., the same was a violation of the Act of March 29, 1917, further defining barratry and amending article 421, P. C., and upon writ of habeas corpus to this court upon an agreed statement of facts is remanded to custody.

#### 3.—Same—Statutes Defined—Constitutional Law.

Article 421, Penal Code, amended by the Act of March 29, 1917, further defining barratry, provides that if any person shall seek to obtain employment in any claim, to prosecute, present or collect the same by means of personal solicitation of such employment shall be deemed guilty of barratry and fined, etc., and the contention that it is too indefinite to be operative under article 6, Penal Code, is untenable, nor is it violative of sections 3 and 19, article 1, of the Constitution of Texas, or section 1 of the Fourteenth Amendment to the Constitution of the United States. Distinguishing McCloskey v. State, 192 S. W. Rep., 1117.

#### 4.—Same—Statutes Construed—Amendment—Legislative Intent.

In passing the Act of March 29, 1917, amending article 421, Penal Code, and further defining the offense of barratry, it was the intention of the Legislature to so amend said article that it would not only include attorneys at law, but any other person who was guilty of any of the things set forth in this Act, which is not violative of any constitutional law, is not discriminatory and is by due course of the law of the land.

#### 5.—Same—Police Regulation.

The possession and enjoyment of all rights is subject to such reasonable conditions as may be deemed by the governing authorities of the country essential to the safety, health, peace, good order and morals of the community. Following Crowley v. Christensen, 137 U. S., 86, and other cases.

#### 6.—Same—Rule Stated—Legislative Authority—Police Power.

It is also well established that when a State exerting its recognized authority undertakes to suppress what it is free to regard as a public evil it may

adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action protective. Following Purity Extract & P. Co. v. Lynch, 226 U. S., 192, and other cases.

### 7.—Same—Rule Stated—Police Power.

All property within the jurisdiction of the State, however unqualified may be the title of the owner, is held on the implied condition or obligation that it shall not be injurious to the equal right of others, to the use and benefit of their own property, and is held subject to the general police power of the State.

### 8.—Same—Legislative Authority—Police Power.

It is clearly shown that the business followed by relator, and doubtless by others, who have followed the same business, was most pernicious and vicious, and there can be no doubt that the Legislature had the right to enact the law of barratry as above defined, and that it is valid and constitutionl.

### 9.—Same—Original Opinion—Words and Phrases—Assignment.

While the statements in the court's original opinion as to assignments of claims may have been too broad, yet this can not materially affect the conclusions reached in the original opinion.

From Bexar County.

Original habeas corpus proceedings, asking release from arrest for a violation of article 421, Penal Code, further defining barratry as amended by the Act of March 29, 1917.

The opinion states the case.

*Ward & Bickett,* for relator.—On question of barratry statutes and police power: H. & T. C. Ry. Co. v. City of Dallas, 98 Texas, 415; Adams v. Tanner, U, S., recently decided; Ex parte McCarver, 39 Texas Crim. Rep., 452; Owens v. State, 53 id., 907.

On question of violation of Fourteenth Amendment, U. S. Constitution: N. Y. Life Ins. Co. v. Head, 234 U. S., 149; G., H. & S. A. Ry. Co. v. Freeman, 57 Texas, 156; Ex parte Brown, 38 Texas Crim. Rep., 302; Traer v. Clems, 115 U. S., 528; Coppage v. Kansas, 236 U. S., 1.

*E. B. Hendricks,* Assistant Attorney General, and *B. D. Tarlton,* for the State.—On the question of police power: Powell v. Pennsylvania, 127 U. S., 698; Austin v. Tennessee, 179 U. S., 343; Murphy v. California, 225 U. S., 623; Rast v. Van Deeman et al., 240 U. S., 67, and cases cited in opinion.

PRENDERGAST, Judge.—This habeas corpus proceeding was instituted to test the validity of our barratry statute. Relator contends it is void and unconstitutional on these grounds, briefly stated:

1. Because so far as it relates to persons who are not attorneys, its provisions are so indefinitely framed and are of such doubtful construction as to be inoperative under article 6, Penal Code.

2. Because, as claims for personal injuries, and all other choses in action, are property, and assignable, the right to solicit their purchase, and to seek employment to either collect or purchase them, is a lawful

business, and all persons have a right to engage therein, and, therefore, said law is void because in violation of sections 3 and 19, article 1, of our Constitution.

3. Because it is in conflict with section 1 of the Fourteenth Amendment to the United States Constitution, in that it is class legislation, permitting the adjustment of all personal property except claims and debts, and denies to him the equal protection of the law.

The statute so attacked is the Act of March 29, 1917, page 336, the caption of which as corrected by the Act approved March 29, 1917, page 497, is:

"An Act to amend article 421 of the Penal Code of the State of Texas, to further define 'barratry' so as to include the fomenting of litigation for profit and by persons in addition to attorneys at law by soliciting employment or advancing money or other thing of value to claimants or to the parties to litigations in order to procure employment, or who practice law without license.

"*Be it enacted by the Legislature of the State of Texas:*

"SECTION 1. That article 421 of the Penal Code be, and is hereby amended so as to hereafter read as follows:

" 'Article 421. (a) If any person shall wilfully instigate, maintain, excite, prosecute or encourage the bringing of any suit or suits at law or equity in any court of this State in which such person has no interest, for his own profit or with the intent to distress or harass the defendant therein; (b) or shall wilfully bring or prosecute any false suit or suits at law or equity, of his own, for his own profit or with the intent to distress or harass the defendant therein: (c) or shall wilfully instigate, maintain, excite, prosecute or encourage the bringing or presentation of any claim in which such person has no interest, for his own profit or with the intent to distress or harass the person against whom such claim is brought or prosecuted; (d) or shall seek to obtain employment in any claim, to prosecute, defend, present or collect the same by means of personal solicitation of such employment, or by procuring another to solicit for him employment in such claim; (e) or who shall, by himself or another, seek or obtain such employment by giving, directly or indirectly, to the person from whom the employment is sought money or other thing of value; (f) or who shall, directly or indirectly, pay the debts or liabilities of the person from whom such employment is sought; (g) or who shall loan or promise to give, loan or otherwise grant money or other valuable thing to the person from whom such employment is sought before such employment, whether the same be done directly by him or through another; (h) or if any attorney at law shall seek or obtain employment in any suit or case at law, or in equity, to prosecute or defend the same by means of personal solicitation of such employment, or by procuring another to

solicit for him employment in such cases; (i) or who shall, by himself or another, seek to obtain such employment by giving directly or indirectly to the person from whom employment is sought money or other thing of value; (j) or who shall directly or indirectly pay the debts or liabilities of the person from whom such employment is sought; (k) or who shall loan or promise to give, loan or otherwise grant money or other valuable thing to the person from whom such employment is sought, before such employment, in order to induce such employment, whether the same shall be done directly by him or through another, shall be deemed guilty of barratry, and shall upon conviction be punished by fine in any sum not to exceed five hundred ($500) dollars, and may in addition thereto be imprisoned in the county jail not exceeding three months; provided, that the penalties hereinbefore prescribed shall apply not only to attorneys at law, but to any other persons who may be guilty of any of the things set forth in the foregoing provisions of this Act. The term attorney shall include counsel at law; and any attorney at law violating any of the provisions of this law shall in addition to the penalty hereinabove provided, forfeit his right to practice law in this State, and shall be subject to have his license revoked and be disbarred in the manner provided by law for dishonorable conduct or malpractice, whether he has been convicted for violating this law or not.'

"SEC. 2. The evils sought to be remedied by this Act being such as to prevent amicable and just settlements of claims and disputes between parties and interfere with the due administration of justice in the courts, an emergency and an imperative public necessity exists that requires that the constitutional rule requiring bills to be read on three several days be suspended, and that this Act shall take effect from and after its passage, and it is so enacted."

We have subdivided said Act by letters a, b, c, and so on, so that what is made an offense may be more readily seen in the discussion. These subdivisions are not so designated in the Act itself.

The complaint and information herein was in two counts. The first avers that on September 23, 1917:

"One Gus Rote and one B. Richardson were traveling and riding in Bexar County, Texas, upon a public road in said county, in two different automobiles, which were going in opposite directions; that through the carelessness and negligence of the said Gus Rote the said two automobiles then and there collided; that by reason of the said collision of said two automobiles the said B. Richardson received divers and sundry serious injuries, whereby and on account thereof the said B. Richardson had a claim and cause of action for damages against the said Gus Rote, by reason thereof; that thereafter, towit: on the 25th day of September, A. D. 1917, Frank P. McCloskey, who was not then and there an attorney at law, having learned of the collision of

said two automobiles, as aforesaid, and of the injuries received thereby, by the said B. Richardson, and of the existence of the claim and cause of action arising thereby in favor of the said B. Richardson against the said Gus Rote, for damages on account of the personal injuries aforesaid, received by him, the said B. Richardson, as aforesaid, the said Frank P. McCloskey, in the County of Bexar and State of Texas, on the 25th day of Septembr, A. D. 1917, did see the said B. Richardson and did then and there seek to obtain employment from the said B. Richardson in said claim aforesaid, against the said Gus Rote, to prosecute and to present and collect the same by means of personal solicitation of such employment from and by the said B. Richardson aforesaid, contrary to the statute in such case made and provided and against the peace and dignity of the State."

The second avers: "That heretofore, towit: Jack W. Neal and Jack C. Neal were doing business in the city of San Antonio, Bexar county, State of Texas, as co-partners, under the firm name of Jack W. Neal & Son; that among other things, the said Jack W. Neal & Son were engaged in the business of painting vehicles and buggies; that on June 23, A. D. 1917, one Edward Dwyer did employ the said Jack W. Neal & Son to paint a buggy owned by him, the said Edward Dwyer, whereby the said Edward Dwyer became justly indebted therefor to the said Jack W. Neal & Son in the sum of ten dollars and fifty cents ($10.50); that the said Edward Dwyer had never paid said sum of money to the said Jack W. Neal & Son, but still owes the said sum therefor to them; that Frank P. McCloskey, who was not then and there an attorney at law, having learned of said transaction, and having learned that the said Edward Dwyer was so indebted as above stated to the said Jack W. Neal & Son in the sum of ten dollars and fifty cents ($10.50), as aforesaid, he, the said Frank P. McCloskey, did, in the County of Bexar and State of Texas, on the 25th day of September, A. D. 1917, go and see the said Jack W. Neal & Son in relation to their said claim against the said Edward Dwyer, and did then and there seek to obtain employment from said Jack W. Neal & Son in the said claim aforesaid, to prosecute, present and collect the same by means of personal solicitation of such employment from the said Jack W. Neal & Son, as aforesaid, and that in pursuance of said personal solicitation of such employment, by the said Frank P. McCloskey, the said Jack W. Neal & Son did then and there deliver said claim aforesaid, against the said Edward Dwyer, to him, the said Frank P. McCloskey, with full power and authority to prosecute, present and collect the same, they agreeing to pay him, the said Frank P. McCloskey, a percentage of said claim aforesaid, in the event he should succeed in collecting the same from the said Edward Dwyer, as aforesaid," concluding as the previous count.

Relator was arrested and held under a proper warrant duly issued

upon said information. He seeks release therefrom on the grounds above stated.

Barratry was an offense at common law, and is so made by statutes of many, if not all, the States. As mentioned by the State in its brief, barrators are described by 4 Blackstone, page 125, as "These pests of civil society, that are perpetually endavoring to disturb the repose of their neighbors, and officiously interfering in other men's quarrels."

That portion of said statute under which the information was drawn is to this effect: "If any person . . . shall seek to obtain employment in any claim, to prosecute, present or collect the same by means of personal solicitation of such employment, . . . he shall be deemed guilty of barratry," fined, etc.

This statute is clear and certain to the effect that it makes it an offense for any one, by personal solicitation to seek to be employed by another to prosecute or collect any claim such other may have.

That one may have the right to sell his unliquidated claim for damages for a personal injury to himself, or that he has the right to assign any chose in action or other claim he may have against another, does not prevent the Legislature from making it unlawful for an outsider—a barrator—to do just what it did make it unlawful to do by said Act of 1917. As for that matter, the common law, in effect, forbade the sale of any chose in action. Our statute changed the common law in that respect (art. 583, R. S.) and made them assignable. Prior to 1895 a claim of damages for personal injury was not assignable. (McCloskey v. San Antonio Trac. Co., 192 S. W. Rep., 1117.) The Legislature would have the power to again make all such claims unassignable, and these older laws would not control the effect of this amendment, but it would control and modify them.

It seems reasonably certain that the alleged acts of relator himself were the direct cause of the Legislature amending said article 421 of the Penal Code, by said Act of 1917. Before said amendment, said Act read:

"If any person shall wilfully instigate, maintain, excite, prosecute or encourage the bringing of any suit at law or equity in any court of this State in which such person has no interest, with the intent to distress or harass the defendant therein, or shall wilfully bring or prosecute any false suit or suits at law or equity, of his own, with the intent to distress or harass the defendant therein, or, if any attorney at law shall seek or obtain employment in any suit or case at law or in equity, to prosecute or defend the same by means of personal solicitation of such employment, or by procuring another to solicit for him employment in such cause, or who shall, by himself or another, seek or obtain such employment by giving to the person from whom the employment is sought money or other thing of value or who shall, directly or indirectly, pay the debts or liabilities of the person from whom such employment is sought, or who shall loan or promise to give, loan or other-

wise grant money or other valuable thing to the person from whom such employment, whether the same shall be done directly by him or through another, shall be deemed guilty of barratry, and shall, upon conviction, be punished by fine in any sum not to exceed five hundred dollars, and may in addition thereto be imprisoned in the county jail not exceeding three months. The term attorney at law shall include counselor at law; and any attorney at law violating any of the provisions of this law shall, in addition to the penalty hereinbefore provided, forfeit his right to practice law in this State, and shall be subject to have his license revoked and be disbarred in the manner provided by law for dishonorable conduct or malpractice, whether he has been convicted for violating this law or not."

Shortly prior to February, 1917, the San Antonio Traction Company brought a suit for injunction against relator, setting up in detail a terrific state of facts which he had committed, which are stated by the San Antonio Court of Civil Appeals in the opinion, 192 S. W. Rep., 1117, and of which the opinion says: "The evidence introduced at the hearing is fairly summarized by the trial judge in his terse, lucid, and able opinion, as follows: 'The testimony offered by the plaintiff tends strongly to establish the material allegations in the plaintiff's petition. It appears that about 60 per cent of all the claims presented against the plaintiff are presented by the defendant. A large number of witnesses testified that they had rceived slight injuries, or been on cars which were derailed, in which they received practically no injuries; that they were not acquainted with the defendant or his agents, and that almost immediately after such accidents the defendant or his agents approached them and solicited his employment by the claimants, urging them to present claims against the plaintiff for large damages, and that, if they would give him the claims to handle, he could obtain large sums of money for them, and urging them to exaggerate their injuries, to remain in bed as long as they could endure it, and when they went out insisted upon their using crutches when not necessary, and by various means trying to induce them to assist him in obtaining large sums of money from the plaintiffs, in many instances paying them a considerable sum of money in advance for the purpose of securing contracts of employment from them, and in some instances calling in a doctor to advise the claimants that they were seriously and permanently injured, when in truth and in fact they were only slightly injured, or not injured at all; that a great number of suits for hundreds of thousands of dollars were filed by attorneys employed by the defendant on claims presented by the defendant, and that the defendant is still continuing said business, one claim having been presented during the hearing of this application, and that he proposes to so continue the same. Although the defendant and his principal agent and assistant were present in court during the hearing of this application and heard the testimony of these witnesses, in which they were charged with the

things hereinabove stated, they did not take the stand to deny or refute the testimony of these witnesses." The District Court enjoined him, from which he appealed. The Court of Civil Appeals, in an opinion rendered February 7, 1917, held that said article 421, as it then was, restricted the offense of barratry to attorneys at law, saying: "It is clear that only an attorney at law is forbidden to solicit employment in any suit himself or by an agent. Why the Legislature left it lawful for a layman to do with impunity those things which it made unlawful to be done by an attorney at law, we are not called upon to explain. It may be the Legislature did not anticipate that a layman would develop a large and lucrative business of speculation and peculation, as Judge Gould expressed it in the brief in the Bentinck case, dealing with the accidents of transportation companies. We find that there is not in force in this State any common law nor statutory law that makes it unlawful for a person, who is not a licensed attorney, to solicit employment as agent to adjust claims, nor to solicit claimants to present claims or sue upon them."

Thereupon, the Legislature passed said amendment to cover this very omission, enacting "if any person," etc., and further enacting therein: "that the penalties hereinbefore prescribed shall apply not only to attorneys at law, but to any other persons who may be guilty of any of the things set forth in the foregoing provisions of this Act." The caption also makes it clear that all others, as well as attorneys, were embraced.

Surely such conduct by relator, or any other, was such as would not only authorize, but require the Legislature, to make it an offense, and thereby seek to prevent in future such iniquitous conduct. But the policy of the Legislature is no concern of the courts, just so it does not, by its legislation, violate the Constitution.

There is nothing in said Act contravening sections 3 or 19, article 1, of our Constitution. The Act, so far as relator is concerned, applies to all persons alike, and gives no special privileges to anyone, and denies none to him except which it denies to all others. Nor does said Act deprive him, or any other, of life, liberty, property, privilege or immunity, except by due course of the law of the land. The Act itself is due course of law.

Neither is there anything in the Act smacking of class legislation. The reverse of this is true. It applies to every person who violates its provisions. It makes no class. But even if it did, the Legislature had the right, and in many instances it is its duty, to make classes in the enactment and enforcement of laws. See authorities in note 10, page 61, Harris' Texas Constitution.

Relator, by his able attorneys, has briefed this case from his standpoint in a clear and forcible manner, and cited authorities claiming

they sustain his contentions. It, and the authorities cited by him, have had due and full consideration.

Because it is the opinion of this court that said Act is valid and not unconstitutional, it is ordered that relator be remanded to the custody of the sheriff of Bexar County.

Relator remanded to custody.

*Relator remanded to custody.*

### ON REHEARING.

#### January 16, 1918.

PRENDERGAST, Judge.—In his motion for rehearing the relator again urges, in a forcible brief and argument, substantially the same contentions made by him in the original submission of this cause. As contended by the State in its brief and argument, in reply to the relator's, there is no substantial difference from his original insistence. It would seem needless, then, to further discuss any of them. However, it is thought best to cite and quote from some of the many decisions, especially from the United States Supreme Court, directly in point, establishing the law clearly against relator's contentions.

The statute which he attacks and the complaint and information against him thereunder, were quoted in the original opinion; also the grounds of his attack were stated therein. It is unnecessary to repeat any of these. The authorities, and quotations therefrom, which will now be given, are so clearly applicable it will be unnecessary to enter into any specific application of them in this opinion.

The United States Supreme Court, in Crowley v. Christensen, 137 U. S., 86, 34 L. Ed., 623, laid down the correct doctrine applicable herein, as follows:

"It is undoubtedly true that it is the right of every citizen of the United States to pursue any lawful trade or business, under such restrictions as are imposed upon all persons of the same age, sex and condition. But the possession and enjoyment of all rights are subject to such reasonable conditions as may be deemd by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law. The right to acquire, enjoy and dispose of property is declared in the Constitution of several States to be one of the inalienable rights of man. But this declaration is not held to preclude the Legislature of any State from passing laws respecting the acquisition, enjoyment and disposition of property. What contracts respecting its acquisition and disposition shall be valid and what void or voidable; when they

shall be in writing and when they may be made orally, and by what instruments it may be conveyed or mortgaged,—are subjects of constant legislation. And as to the enjoyment of property, the rule is general that it must be accompanied with such limitations as will not impair the equal enjoyment by others of their property. *Sic utere tuo ut alienum non laedas* is a maxim of universal application.

"For the pursuit of any lawful trade or business, the law imposes similar conditions. Regulations respecting them are almost infinite, varying with the nature of the business."

That great court, in Purity Extract & T. Co. v. Lynch, 226 U. S., 192, 57 L. Ed., 187, again laid down the unquestionable doctrine applicable herein, as follows:

"It is also well established that, when a State exerting its recognized authority, undertakes to suppress what it is free to regard as a public evil, it may adopt such measures having reasonable relation to that end as it may deem necessary in order to make its action effective. It does not follow that because a transaction, separately considered, is inocuous, it may not be included in a prohibition the scope of which is regarded as essential in the legislative judgment to accomplish a purpose within the admitted power of the government. Booth v. Illinois, 184 U. S., 425, 46 L. Ed., 623, 22 Sup. Ct. Rep., 425; Otis v. Parker, 187 U. S., 606, 47 L. Ed., 323, 23 Sup. Ct. Rep., 168; Ah Sin v. Wittman, 198 U. S., 500, 504, 49 L. Ed., 1142, 1144, 25 Sup. Ct. Rep., 756; New York ex rel. Silz v. Hesterberg, 211 U. S., 31, 53 L. Ed., 75, 29 Sup. Ct. Rep., 10; Murphy v. California, 225 U. S., 623, 56 L. Ed., 1229, 32 Sup. Ct. Rep., 697. With the wisdom of the exercise of that judgment the court has no concern; and unless it clearly appears that the enactment has no substantial relation to a proper purpose, it can not be said that the limit of legislative power has been transcended. To hold otherwise would be to substitute judicial opinion of expediency for the will of the Legislature,—a notion foreign to our constitutional system.

"Thus, in Booth v. Illinois, 184 U. S., 425, 46 L. Ed., 623, 22 Sup. Ct. Rep., 425, the defendant was convicted under a statute of that State which made it a criminal offense to give an option to buy grain at a future time. It was contended that the statute, as interpreted by the State court, was 'not directed against gambling contracts relating to the selling or buying of grain or other commodities, but against mere options to sell or buy at a future time without any settlement between the parties upon the basis of differences, and therefore involving no element of gambling.' The argument was that it directly forbade the citizen 'from pursuing a calling which, in itself, involves no element of immorality.' This court, in sustaining the judgment of conviction, said: 'If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils can not be successfully reached unless that

calling be actually prohibited, the courts can not interfere, unless looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law.' It must be assumed, it was added, that 'the Legislature was of opinion that an effectual mode to suppress gambling grain contracts was to declare illegal all options to sell or buy at a future time'; and the court could not say that the means employed were not appropriate to the end which it was competent for the State to accomplish. (Id., pp. 429, 430.)

"The same principle was applied in Otis v. Parker, 187 U. S., 606, 47 L. Ed., 323, 23 Sup. Ct. Rep., 168, which dealt with the provision of the Constitution of California that all contracts for the sale of shares of the capital stock of any corporation, on margin, or to be delivered at a future day, should be void, and that any money paid on such contracts might be recovered. The objection urged against the provision in its literal sense was that the prohibition of all sales on margin bore no reasonable relation to the evil sought to be cured; but the court upheld the law, being unwilling to declare that the deep-seated conviction on the part of the people concerned as to what was required to effect the purpose could be regarded as wholly without foundation. (Id., pp. 609, 610.)

"A strong illustration of the extent of the power of the State is found in New York ex rel. Silz v. Hesterberg, 211 U. S., 31, 53 L. Ed., 75, 29 Sup. Ct. Rep., 10. The State of New York, by its forest, fish, and game law, prohibited the possession of certain game during the closed season. The statute covered game coming from without the State. It appeared that Silz was charged with the possession of plover and grouse which had been lawfully taken abroad during the open season and had been lawfully brought into the State; that these game birds were varieties different from those known as plover and grouse in the State of New York; that, although of the same families, in form, size, color, and markings, they could readily be distinguished from the latter; and that they were wholesome and valuable articles of food  This court affirmed the conviction, saying: 'It is insisted that a method of inspection can be established which will distinguish the imported game from that of the domestic variety, and prevent confusion in its handling and selling. That such game can be distinguished from domestic game has been disclosed in the record in this case, and it may be that such inspection laws would be all that would be required for the protection of domestic game. But, subject to constitutional limitations, the Legislature of the State is authorized to pass measures for the protection of the people of the State in the exercise of the police power, and is itself the judge of the necessity or expediency of the means adopted.' It was pointed out that the prohibition in question had been

found to be expedient in several States, 'owing to the possibility that dealers in game may sell birds of the domestic kind under the claim that they were taken in another State or country.' "

In Patsone v. Pennsylvania, 232 U. S., 138, 58 L. Ed., 543, the same doctrine as above announced was again reiterated and emphasized. In that case an Act of the Legislature of Pennsylvania was under consideration which made it an offense for any resident foreign born person to own or be possessed of a shotgun or rifle in that State, and also forfeited such weapon. The object of the Legislature of that State in enacting that law was to protect wild game in that State. The United States Supreme Court sustained the validity of that law. It is unnecessary to quote the opinion.

In 6 Ruling Case Law, 193, based on the decisions of the United States Supreme Court and of many of the States of the United States, the principles applicable herein are clearly laid down. Some of these will be here quoted. Sec. 192 is:

"All property within the jurisdiction of a State, however unqualified may be the title of the owner, is held on the implied condition or obligation that it shall not be injurious to the equal right of others to the use and benefit of their own property. In other words, all property is held subject to the general police power of the State so to regulate and control its use in a proper case as to secure the general safety, the public welfare, and the peace, good order and morals of the community. Accordingly it is a fundamental principle of the constitutional system of the United States that rights of property, like all other social and conventional rights, are subject to such reasonable restraints and regulations established by law as the Legislature, under the governing and controlling power vested in it by the Constitution, may think necessary and expedient. And to these ends the Legislature under its police power may pass laws regulating the acquisition, enjoyment and disposition of property, even though in some respects these may operate as a restraint on individual freedom or the use of property. The subordination of property rights to the just exercise of the police power has been said to be as complete as is the subjection of these rights to the proper exercise of the taxing power, and it is held that this implied condition is quite irrespective of the source or character of the title. This principle is in effect an application of the maxim which underlies the police power, *sic utere tuo ut alienum non laedas.*"

Again in section 211, page 217, it is laid down: "It can not be questioned that the State, under its police power, has the right to regulate any and all kinds of business, to protect the public health, morals and welfare, subject to the restrictions of reasonable classification. If a vocation or the mode of exercising it inflicts injury to the rights of others, or is inconsistent with the public welfare, it may be regulated and restrained by the State, by the exercise of its police power, and

this power is not confined to the regulation of these classes of business which are essentially illegal, for it extends likewise to lawful callings. In this connection it has been declared that the right of regulation is an exception to the general rule that every person has a right to pursue any lawful calling. . . . It is not necessary that it always affect injuriously the public at large. On the contrary, it may be regulated if it affects injuriously those engaged in it, or those brought in direct contact with it, even though its pursuit may benefit generally the people of the State at large."

Again in section 214, page 221, it is said: "Since all rights are held subject to the police power of the State, when necessary the Legislature may prohibit absolutely the maintenance of any particular business if the public safety or the public morals require its discontinuance; and the hand of the Legislature can not be stayed from providing for its discontinuance by any incidental inconvenience which individuals or corporations may suffer. A calling may not be immoral in itself, and yet the tendency of what is generally or ordinarily or often done in pursuing that calling may be towards that which is admittedly immoral or pernicious. If, looking at all the circumstances that attend, or which may ordinarily attend, the pursuit of a particular calling, the State thinks that certain admitted evils can not be successfully reached unless that calling be actually prohibited, the courts can not interfere, unless, looking through mere forms and at the substance of the matter, they can say that the statute enacted professedly to protect the public morals has no real or substantial relation to that object, but is a clear, unmistakable infringement of rights secured by the fundamental law." See also Claunch v. State, 82 Texas Crim. Rep., 355, 199 S. W. Rep., 483; Johnson v. Elliott, 168 S. W. Rep., 968.

In the original opinion, in the case from the Court of Civil Appeals at San Antonio, cited and quoted from, it is clearly shown that the business followed by relator, and doubtless by others who have followed the same business, was most pernicious and vicious; that it had a tendency to, if it did not actually produce, fraud, and fabrication of a most injurious character. There can be no doubt under the authorities and reason that the Legislature had the right to enact the law attacked by the relator herein, and that it is valid and constitutional.

Particular stress and a great many authorities are cited by relator in his motion and brief herein, contending, in effect, that where it was stated in the original opinion, that the common law, in effect, forbade the sale of any chose in action, and that our statute (art. 583, R. S.) changed the common law so as to make them assignable, is not correct, relator claiming and citing many authorities to the effect that either at common law as in later years declared, and particularly in equity, all choses in action were assignable. Perhaps the said statement in the court's opinion may have been too broad, but whether the state-

ment therein was correct, or relator's contention is correct, did not and could not materially affect the conclusion reached in the original opinion. So that it is unnecessary now to further state or discuss that question. It might be conceded for the sake of the argument that relator's contention is correct and the statement by the court was incorrect. The same result from the authorities would be reached.

The motion for rehearing is overruled.          *Overruled.*