## OTIS *v.* PARKER.

ERROR TO THE SUPREME COURT OF THE STATE OF CALIFORNIA.

No. 4.   Argued December 11, 12, 1902.—Decided January 5, 1903.

The provision in article IV, section 26 of the constitution of California providing that " all contracts for the sales of shares of the capital stock of any corporation or association, on margin, or to be delivered at a future day, shall be void, and any money paid on such contracts may be recovered by the party paying it by suit in any court of competent jurisdiction," is not contrary to the first section of the Fourteenth Amendment of the Constitution of the United States, so far as it relates to sales on margins.

THE case is stated in the opinion of the court.

*Mr. John G. Johnson* for plaintiffs in error.   *Mr. Edmund Tauszky* was with him on the brief.

*Mr. Joseph Hutchinson* for defendant in error.   *Mr. John H. Miller* was with him on the brief.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action in three counts, for money had and received,

for money paid and promised to be repaid, and for margins paid to the defendants as stock brokers on contracts to buy and sell mining stocks, respectively. The answers to the first two counts are general denials and other matters now immaterial. The answer to the third count, beside a general denial, sets up that the count is based upon a provision in article IV, section 26, of the constitution of California, and that that provision is contrary to the first section of the Fourteenth Amendment of the Constitution of the United States. It appears by the record that the only cause of action was that stated specifically in the third count, and that the defendants interposed the constitutional objection at the trial and that it was overruled. The plaintiff had a general verdict on all three counts. The case was taken from the Superior to the Supreme Court of California on appeal, and the judgment of the Superior Court was affirmed, with an immaterial modification. It now is brought here by a writ of error to the Supreme Court of the State.

We must take it as established that the plaintiff did enter into transactions prohibited by the constitution of California, and that he had a right to his judgment under that constitution if the clause relied upon is not contrary to the Constitution of the United States. There is no question that the parties were subject to the provisions of the latter Constitution, and no doubt that the question whether it invalidated the state constitution necessarily was passed upon, and was answered in the negative by the state court. 130 California, 322.

The provision of the state constitution is as follows : " All contracts for the sales of shares of the capital stock of any corporation or association, on margin, or to be delivered at a future day, shall be void, and any money paid on such contracts may be recovered by the party paying it by suit in any court of competent jurisdiction." There was some suggestion that these words might be narrowed by construction to contracts not contemplating a *bona fide* acquisition of the stock, but intended to cover only a wager or contemplated settlement of differences. Of course, if they were construed in that sense there would be no doubt of their validity. *Booth* v. *Illinois*, 184 U. S. 425. But while the Supreme Court of California says

in this case that it "will always see that legitimate business
transactions are not brought under the ban," in the same sen-
tence it leaves open the hypothesis that the provision "fails to
distinguish between *bona fide* contracts and gambling contracts,"
and sustains it as a proper police regulation, even if it does fail
as supposed. Therefore it may be held hereafter that ordinary
contracts for the sale of stocks on margin are not legitimate
transactions, and it would not be safe for us to take the words
in any other than their literal meaning, or to assume in advance
of a decision that they will be taken in a narrow sense. In this
case the jury were instructed broadly to find for the plaintiff
if he had paid any money to the defendants as a margin for
the purchase of stock of a corporation, and this instruction was
sustained.

The objection urged against the provision in its literal sense
is that this prohibition of all sales on margin bears no reason-
able relation to the evil sought to be cured, and therefore falls
within the first section of the Fourteenth Amendment. It is
said that it unduly limits the liberty of adult persons in making
contracts which concern only themselves, and cuts down the
value of a class of property that often must be disposed of un-
der contracts of the prohibited kind if it is to be disposed of to
advantage, thus depriving persons of liberty and property with-
out due process of law, and that it unjustifiably discriminates
against property of that class, while other familiar objects of
speculation, such as cotton or grain, are not touched, thus de-
priving persons of the equal protection of the laws.

It is true, no doubt, that neither a state legislature nor a state
constitution can interfere arbitrarily with private business or
transactions, and that the mere fact that an enactment purports
to be for the protection of public safety, health or morals, is
not conclusive upon the courts. *Mugler* v. *Kansas*, 123 U. S.
623, 661; *Lawton* v. *Steele*, 152 U. S. 133, 137. But general
propositions do not carry us far. While the courts must exer-
cise a judgment of their own, it by no means is true that every
law is void which may seem to the judges who pass upon it
excessive, unsuited to its ostensible end, or based upon concep-
tions of morality with which they disagree. Considerable lati-

tude must be allowed for differences of view as well as for possible peculiar conditions which this court can know but imperfectly, if at all. Otherwise a constitution, instead of embodying only relatively fundamental rules of right, as generally understood by all English-speaking communities, would become the partisan of a particular set of ethical or economical opinions, which by no means are held *semper ubique et ab omnibus.*

Even if the provision before us should seem to us not to have been justified by the circumstances locally existing in California at the time when it was passed, it is shown by its adoption to have expressed a deep-seated conviction on the part of the people concerned as to what that policy required. Such a deep-seated conviction is entitled to great respect. If the State thinks that an admitted evil cannot be prevented except by prohibiting a calling or transaction not in itself necessarily objectionable, the courts cannot interfere, unless, in looking at the substance of the matter, they can see that it " is a clear, unmistakable infringement of rights secured by the fundamental law." *Booth* v. *Illinois*, 184 U. S. 425, 429. No court would declare a usury law unconstitutional, even if every member of it believed that Jeremy Bentham had said the last word on that subject, and had shown for all time that such laws did more harm than good. The Sunday laws, no doubt, would be sustained by a bench of judges, even if every one of them thought it superstitious to make any day holy. Or, to take cases where opinion has moved in the opposite direction, wagers may be declared illegal without the aid of statute, or lotteries forbidden by express enactment, although at an earlier day they were thought pardonable at least. The case would not be decided differently if lotteries had been lawful when the Fourteenth Amendment became law, as indeed they were in some civilized States. See *Ballock* v. *State*, 73 Maryland, 1.

We cannot say that there might not be conditions of public delirium in which at least a temporary prohibition of sales on margins would be a salutary thing. Still less can we say that there might not be conditions in which it reasonably might be thought a salutary thing, even if we disagreed with the opinion. Of course, if a man can buy on margin he can launch into a

much more extended venture than where he must pay the whole price at once. If he pays the whole price he gets the purchased article, whatever its worth may turn out to be. But if he buys stocks on margin he may put all his property into the venture, and being unable to keep his margins good if the stock market goes down, a slight fall leaves him penniless, with nothing to represent his outlay, except that he has had the chances of a bet. There is no doubt that purchases on margin may be and frequently are used as a means of gambling for a great gain or a loss of all one has. It is said that in California, when the constitution was adopted, the whole people were buying mining stocks in this way with the result of infinite disaster. *Cashman* v. *Root*, 89 California, 373, 382, 383. If at that time the provision of the constitution, instead of being put there, had been embodied in a temporary act, probably no one would have questioned it, and it would be hard to take a distinction solely on the ground of its more permanent form. Inserting the provision in the constitution showed, as we have said, the conviction of the people at large that prohibition was a proper means of stopping the evil. And as was said with regard to a prohibition of option contracts in *Booth* v. *Illinois*, 184 U. S. 425, 431, we are unwilling to declare the judgment to have been wholly without foundation.

With regard to the objection that this provision strikes at only some, not all, of the objects of possible speculation, it is enough to say that probably in California the evil sought to be stopped was confined in the main to stocks in corporations. California is a mining State, and mines offer the most striking temptations to people in a hurry to get rich. Mines generally are represented by stocks. Stock is convenient for purposes of speculation, because of the ease with which it is transferred from hand to hand, as well as for other reasons. If stopping the purchase and sale of stocks on margin would stop the gambling which it was desired to prevent, it was proper for the people of California to go no farther in what they forbade. The circumstances disclose a reasonable ground for the classification, and thus distinguish the case from *Connolly* v. *Union Sewer Pipe Co.*, 184 U. S. 540. We cannot say that treating stocks

of corporations as a class subject to special restrictions was unjust discrimination or the denial of the equal protection of the laws.

*Judgment affirmed.*

Mr. Justice Brewer and Mr. Justice Peckham dissented.