MARPOSS CORPORATION v CITY OF TROY

Docket No. 137121. Submitted October 6, 1993, at Detroit. Decided
March 10, 1994; approved for publication March 18, 1994, at
9:00 A.M.

Marposs Corporation brought an action in the Oakland Circuit
Court against the City of Troy after the city refused to consent
to a tax abatement that the plaintiff sought pursuant to the
Technology Park Development Act, MCL 207.701 et seq.; MSA
7.800(101) et seq., from the City of Auburn Hills when the
plaintiff moved its facilities from the City of Troy to the City of
Auburn Hills. The court, Richard D. Kuhn, J., granted sum-
mary disposition for the defendant of the counts alleging that
the defendant had waived its right to object and that the
defendant's objection violated the constitutional guarantee of
equal protection. The court granted summary disposition for
the plaintiff of the counts alleging that the defendant abused
its discretion in objecting and that the defendant's objection
conflicted with the legislative scheme. The defendant appealed,
and the plaintiff cross appealed.

The Court of Appeals held:

1. The trial court properly found that the defendant did not
waive its right to object by initially referencing the wrong
statute in its objection or by failing to file an amended objec-
tion within twenty days of its adoption.

2. The section of the act that provides that an application for
a tax exemption shall not be approved by the receiving govern-
mental unit where the governmental unit from which the
business is moving objects, MCL 207.710(2)(d); MSA 7.800(110)
(2)(d), is unconstitutional. Constitutionally sufficient standards
are not provided in the statute. The statute provides no indica-
tion of what reasons are valid grounds for objecting and there
are no guidelines provided to determine whether objections
should be filed or for deciding, once an objection is filed,
whether an objection is reasonable and should be sustained.
The absolute grant of discretion is unconstitutional because the

REFERENCES
Am Jur 2d, Administrative Law §§ 110, 113-122.
See ALR Index under Delegation of Powers.

statute then becomes an open door to favoritism and discrimination. The statute is an unconstitutional delegation of power.

3. The defendant's objections would not have been sufficient even if they had involved job loss because the statute is silent regarding when an objection based on lost jobs is valid.

4. If sufficient standards could be gleaned from the statute as a whole, a finding would be made that the defendant abused its discretion in objecting to the move.

5. The purpose of the act is not to revitalize economically depressed areas, but to encourage the development of high-tech industry and interaction between that industry and institutions of higher learning, and also to secure long-term prosperity for the state. The defendant's reasons for objecting constitute an abuse of discretion and would be insufficient to block the tax abatement because they did not relate to the purposes of the act.

Affirmed in part and reversed in part.

TAYLOR, P.J., dissenting, stated that the Technology Park Development Act is constitutional and the defendant's city council did not exceed the legitimate bounds of its legislative discretion in objecting to the plaintiff's tax exemption. The power to object to the exemption is a legislative function given to the defendant's legislative body by statute that may not be usurped by the judiciary. The plain language of the act gives the defendant the absolute right to veto the tax exemption, and the lack of standards and guidelines surrounding the exercise of the objection is not a fatal flaw. The statute provides an authorization from the Legislature to local municipal legislative bodies to decide whether and on what grounds to object. The state constitution allows such authorization. The defendant's objection was well within the ambit of the act and was not arbitrary or unreasonable. The act was intended to ·help revitalize economically depressed areas. The actions of the Troy City Council should be affirmed and the trial court's order granting summary disposition for the plaintiff should be reversed.

1. ADMINISTRATIVE LAW — DELEGATION OF POWER — STATUTES.

The guiding principles in determining whether a statute provides sufficient standards for delegation of authority are: the act in question must be read as a whole and the provision in question construed with reference to the entire act; the standard should be as reasonably precise as the subject matter requires or permits; if possible, the statute must be construed as valid, i.e., it must be construed as conferring administrative, not legisla-

tive, power and as giving discretionary, not arbitrary, authority; and the statute must satisfy due process requirements.

2. TAXATION — TECHNOLOGY PARK DEVELOPMENT ACT — PURPOSES OF ACT.

The purpose of the Technology Park Development Act is to encourage the development of high-tech industry and the interaction between that industry and institutions of higher learning, and to secure the long-term prosperity of the state; the revitalization of economically depressed areas is not a purpose of the act (MCL 207.701 *et seq.*; MSA 7.800[101] *et seq.*).

3. TAXATION — CONSTITUTIONAL LAW — TECHNOLOGY PARK DEVELOPMENT ACT — OBJECTIONS TO TAX EXEMPTION — DELEGATION OF LEGISLATIVE POWER.

The provision in the Technology Park Development Act that provides that a tax exemption authorized by the act shall not be approved by the receiving governmental unit where the governmental unit from which the business is moving objects is an unconstitutional delegation of legislative power because it does not provide sufficient standards regarding what reasons are valid grounds for objecting or guidelines to determine whether objections should be filed, or for deciding, once an objection is filed, whether an objection is reasonable and should be sustained; the absolute grant of discretion to the governmental unit from which the business is moving to object and prevent the approval of the exemption is an unconstitutional delegation of power (MCL 207.710[2][d]; MSA 7.800[110][2][d]).

*Butzel Long* (by *James C. Bruno, Clara DeMatteis Mager,* and *Daniel R.W. Rustmann*), for Marposs Corporation.

*Peter A. Letzmann* and *John J. Martin, III,* for the City of Troy.

Before: TAYLOR, P.J., and HOOD and B. A. JASPER,* JJ.

PER CURIAM. This is an action challenging defendant's refusal to consent to a tax abatement under

_____

* Recorder's Court judge, sitting on the Court of Appeals by assignment.

the Technology Park Development Act, MCL
207.701 *et seq.*; MSA 7.800(101), *et seq.*

Plaintiff sought to move its facilities from defendant, City of Troy, to a technology park in the City of Auburn Hills. The City of Auburn Hills offered plaintiff a tax abatement under the statute. However, under the statute, defendant's consent was required before plaintiff could actually be granted the tax abatement. Defendant objected to the move and thereby blocked the abatement, though not the move.

Plaintiff sued, alleging that defendant waived its right to object (count I); that defendant abused its discretion in objecting (count II); that defendant's objection conflicted with the legislative scheme (count III); and that the objection violated the constitutional guarantee of equal protection (count IV).[1] The trial court ruled for defendant on counts I and IV and for plaintiff on counts II and III. The defendant appeals, and the plaintiff cross appeals. We reverse in part and affirm in part.

First, we agree with the trial court that defendant did not waive its right to object by initially referencing the wrong statute in its objection or by failing to file an amended objection within twenty days of its adoption. Imposing such a severe sanction for what is essentially a ministerial error is not supported by the language of the act.

The basic question raised in this appeal is whether the act gives the governmental unit from which the business is moving the absolute right to veto the granting of a tax exemption by the community setting up the technology park.

The preamble to the Technology Park Development Act states, among other things, that the act's purpose is to "provide for the establishment of

---

[1] A claim under the Freedom of Information Act, MCL 15.231 *et seq.*; MSA 4.1801(1) *et seq.* (count v), was dismissed by stipulation.

technology park districts in local governmental units; to provide certain facilities located in technology park districts an exemption from certain taxes; to levy and collect a specific tax upon the owners of certain facilities." The act requires that the technology parks be of a certain size, that they be established in connection with an institution of higher learning, and that only one may be established in any one governmental unit. The act further provides that an application for a tax exemption "shall not" be approved by the receiving governmental unit "unless all of the following requirements are met." MCL 207.710(2); MSA 7.800(110)(2). The only requirement at issue here is stated in subsection 10(2)(d):

> Completion of the facility will not cause the transfer of employment of more than 20 full-time persons from 1 or more local governmental units or, if completion of the facility will cause the transfer of employment of more than 20 full-time persons from 1 or more local governmental units, the applicant has provided notification to the department and to each local governmental unit from which such employment is to be transferred and the notified local governmental unit has not objected by resolution within 30 days after receipt of notification of the transfer of employment. *If a notified local governmental unit objects within 30 days after receipt of the notification, the application shall not be approved until the objection is waived by the objecting local governmental unit.* If the local governmental unit objects, a copy of the resolution of objection showing reasons for the objection shall be filed within 20 days after adoption with the department. [Emphasis added.]

Defendant argues that the emphasized language gives it an absolute right to veto the tax exemption. Plaintiff contends that such a grant of abso-

lute power would render the statute unconstitutional and that, therefore, the statute must be interpreted to allow review of the reasons for defendant's objection under an abuse of discretion standard in light of the goals of the statute. More specifically, plaintiff argues that because defendant did not object to the move on the basis of loss of jobs, its objection was an abuse of discretion and should not be allowed to block the tax abatement.

"There is no doubt that a legislative body may not delegate to another its lawmaking powers. It must promulgate, not abdicate." *Osius v St Clair Shores,* 344 Mich 693, 698; 75 NW2d 25 (1956). "This is not to say, however, that a subordinate body or official may not be clothed with the authority to say when the law shall operate, or as to whom, or upon what occasion, provided, however, that the standards prescribed for guidance are as reasonably precise as the subject matter requires or permits." *Id.*; see also *Lansing School Dist v State Bd of Ed,* 367 Mich 591, 596-598; 116 NW2d 866 (1962). Thus, where the Legislature "has set up sufficient standards for the guidance of the" body making the particular decision, there is no unconstitutional delegation of power. *Id.* at 598; see also *Petrus v Dickinson Co Bd of Comm'rs,* 184 Mich App 282, 294-295; 457 NW2d 359 (1990). On the other hand, where the deciding body is allowed to "change the State law to suit its own purposes" or is given "an unlimited number of choices" regarding when and how to apply the law, the delegation is unconstitutional because the deciding body is being, in effect, permitted to decide or alter policies of statewide concern. *Arlan's Dep't Stores, Inc v Attorney General,* 374 Mich 70, 77; 130 NW2d 892 (1964); see also *Osius, supra* at 697-701.

To determine whether the act provides adequate standards to survive constitutional scrutiny,

"[f]irst, the act in question must be read as a whole; the provision in question must be construed with reference to the entire act. Next, the standard should be as reasonably precise as the subject matter requires or permits. Third, if possible, the statute must be construed as being valid, that is, it must be construed as conferring administrative, not legislative, power and as giving discretionary, not arbitrary, authority. Last, the statute must satisfy due process requirements." [*Petrus, supra* at 294 (quoting *Attorney General v Public Service Comm,* 161 Mich App 506, 510; 411 NW2d 469 [1987]).]

However, the Legislature must not be denied "the ability to set forth standards that are flexible and practicable." *Id.* We conclude that, under these standards, the statute is unconstitutional.[2]

Reading the statute as a whole, it is clear that its goal is to promote the establishment of technology parks where certain industries will be concentrated and accessible to institutions of higher learning. The statute attempts to make concessions to the communities that will lose more than twenty jobs when employers relocate to these parks by allowing them to object to the incentives offered to encourage the move, i.e., by allowing them to object to the tax abatements. The statute attempts to satisfy due process requirements by providing for notice and a statement of reasons.

However, the statute provides no indication of what reasons are valid grounds for objecting. In other words, a community losing more than twenty jobs may object or not, in its sole discretion. There are no guidelines provided to determine, once more than twenty jobs are involved, whether objections should or should not be filed.

[2] We express no opinion regarding the constitutionality of other statutes not before us.

There are no guidelines for deciding, once an objection is filed, whether an objection is reasonable and should be sustained. Defendant's position that it is granted absolute discretion by the statute is therefore not at all irrational. The problem is that, as discussed above, such an absolute grant of discretion is unconstitutional because the statute then "becomes an open door to favoritism and discrimination." See *Osius, supra* at 700.

We cannot agree that constitutionally sufficient standards may be gleaned from the provision allowing for objections.[3] We also cannot agree that defendant's objections would have been sufficient if they had had any relationship to job loss. That is because, since only communities suffering a loss of more than twenty jobs may object, there are always going to be some jobs lost. However, the statute is silent regarding how to determine whether an objection based on lost jobs is valid. For example, the statute does not specify whether there must be some kind of relationship between population and jobs lost or whether some other standard must be met before an objection based on lost jobs is valid. The statute is also silent regarding whether job loss is the only valid reason for objecting. We therefore find that it is an unconstitutional delegation of power.

Going one step further, we also note that if sufficient standards could be gleaned from the statute as a whole, then we would find that defen-

---

[3] The cases cited by plaintiff are distinguishable because the issue there was whether the Legislature had indeed delegated the power to decide whether a tax abatement would be granted. Compare *Lexington Townhouses Cooperative v City of Warren*, 32 Mich App 523, 526; 189 NW2d 138 (1971) (issue was whether municipality had power to determine whether to grant a tax exemption once it found certain facts to be true); see also *Colonial Townhouse Cooperative, Inc v Lansing*, 25 Mich App 24, 26; 181 NW2d 2 (1970) (same issue). Here, there is no question that the power to decide has been delegated. The question is whether any limits have been imposed.

dant abused its discretion in objecting to the move. Defendant offered the following reasons for its objection:

> The City of Auburn Hills need not give inducements for economic development because it is not a city in a state of economic decline; and
> Tax abatements diminish revenues to Oakland County government which must then be supported by other taxpayers in other cities, villages and townships, some of which are in a state of decline; and
> The City Council of the City of Troy concludes that it chooses not to grant tax abatements within the City of Troy and therefore it chooses not to act upon requests which indirectly grant tax abatements outside the City of Troy in prospering communities.

As discussed before, we find from the preamble and the legislative history that the purpose of the act is *not* to revitalize economically depressed areas but rather to encourage the development of high-tech industry and interaction between that industry and institutions of higher learning, and also to attempt to secure long-term prosperity for the state. Because the reasons for defendant's objections do not relate to the purposes of the act, they constitute an abuse of discretion and would be insufficient to block the tax abatement offered to plaintiff.

Affirmed in part and reversed in part.

TAYLOR, P.J. *(dissenting)*. The Technology Park Development Act (TPDA), MCL 207.701 *et seq.*; MSA 7.800 (101) *et seq.*, is not unconstitutional, and the Troy City Council did not exceed the legitimate bounds of its legislative discretion in objecting to plaintiff's transfer to Auburn Hills.

The majority believes that because MCL

207.710(2); MSA 7.800(110)(2) gives unfettered power to Troy to object to plaintiff's transfer, the statute is unconstitutional as an improper delegation of legislative powers by the state legislature. The majority completely misses the mark: Troy is *itself* a legislative body. Just as zoning is a legislative function given by the Legislature to city legislative bodies (city councils) by statute, the power to object to plaintiff's transfer to another city is a legislative function given to Troy's legislative body by statute. Compare *Schwartz v City of Flint*, 426 Mich 295, 311, 313; 395 NW2d 678 (1986), where our Supreme Court reiterated the longstanding view that a city council's enactment of a zoning ordinance is a legislative function, a function that may not be usurped by the judiciary and over which the judiciary has constitutionally limited powers of review.

The majority has veered off the path of intelligible constitutional analysis, propelled by the mistaken notion that the Troy City Council is some type of administrative agency to which too much power has been delegated. But the contrary is true. The municipal entities of this state have, by constitution and statute, been afforded broad grants of legislative authority. Const 1963, art 7, § 29, and, for example, § 3(a) [MCL 117.3(a); MSA 5.2073(a)] of the home rule cities act.[1] The Separation of Powers Clause of our state constitution, Const 1963, art 3, § 2, prohibits the executive or judicial branches of government from usurping that legislative prerogative. *Schwartz, supra.*

The plain language of the TPDA gives Troy the absolute right to veto the tax exemption. The lack of standards and guidelines surrounding the exercise of the objection is not a fatal flaw if one

[1] MCL 117.1 *et seq.*; MSA 5.2071 *et seq.*

remembers that the statute is not the delegation of authority to an administrative agency, but, rather, an authorization from the Legislature to local municipal *legislative bodies* of the power to decide whether and on what grounds to object. The constitution of our state, as referred to above, allows for such and, indeed, across the United States it is by such means that municipalities implement their legislative will. This power then is unexceptionable.

Because the statute passes constitutional muster, the question before us is a very narrow one: was the Troy City Council's objection arbitrary and unreasonable, *Union Twp v Mount Pleasant,* 381 Mich 82, 89-90; 158 NW2d 905 (1968). The responsibility of exercising judicial restraint in legislative matters was discussed by Mr. Justice Holmes:

> While the courts must exercise a judgment of their own, it by no means is true that every law is void which may seem to the judges who pass upon it excessive, unsuited to its ostensible end, or based upon conceptions of morality with which they disagree. Considerable latitude must be allowed for differences of view as well as for possible peculiar conditions which this court can know but imperfectly, if at all. [*Otis v Parker,* 187 US 606, 608-609; 23 S Ct 168; 47 L Ed 323 (1903).]

I would hold that Troy's objection to plaintiff's transfer was well within the ambit of the TPDA, and therefore was not arbitrary or unreasonable.

The majority seizes upon the notion that this statute was not enacted to revitalize economically depressed areas, and from this fact reasons that because the City of Troy objected to plaintiff's transfer on economic grounds, Troy acted unreasonably. This is wrong on its face because the

statute itself says that no tax exemption may be granted unless

> [c]ompletion of the facility is calculated to and will
> . . . have the reasonable likelihood to increase
> economic activity, create employment, retain em-
> ployment, or prevent the loss of employment in
> the local governmental unit in which the facility is
> located. [MCL 207.710(2)(c); MSA 7.800(110)(2)(c).]

It seems to me disingenuous to suggest that the Legislature was not greatly concerned with the vitality of economically depressed areas in light of this provision.

In addition, this statute was amended by 1990 PA 151, § 1, effective June 27, 1990, to add a subsection 2(e). This subsection provides that if *any* employment is caused to be transferred from a local governmental unit with a population of more than 800,000, that local governmental unit may withhold its consent. Because our large metropoli-tan areas are well known to be distressed economi-cally, this amendment is strong evidence that enhancing the vitality of economically endangered areas was a central concern of the Legislature in passing the TPDA.

Obviously, then, it cannot be unreasonable un-der the majority's own analysis for Troy to object for that reason.

I feel it should also be pointed out that, notwith-standing the majority's invocation of the legisla-tive history,[2] it should be understood that it sur-passes unlikely, in a Legislature apportioned on a

---

[2] Legislative histories are *always* suspicious. As Mr. Justice Scalia said, in reference to the United States Congress:

> My general attitude towards [legislative history] can be
> summed up . . . by saying that I regard it as the greatest
> surviving legal fiction. If you can believe that a committee
> report (to take the most respected form of legislative history) in

one person-one vote basis—thus giving the majority of votes in both chambers to urban areas with troubled commercial environments—that the legislators who represent those areas would have acquiesced in a statute that facilitates in any way the economically aggressive suburbs of this state pirating the large cities' remaining commercial tax base. What is more credible and certainly more probable is that the urban legislative majority would only countenance this concept if there could be an untrammeled right to object by their cities and the measure was accordingly promoted as targeting only out-of-state high-tech businesses. That the right of objection was extended only to Michigan municipalities reinforces this point. In any case, a resort to intent is unneeded because the statute is clear on its face and thus should be

---

fact expresses what all the Members of Congress (or at least a majority of them) "intended" on the obscure issues that it addresses; if you can believe that a majority of them even *read* the committee report; indeed, if you can believe that a majority of them was even *aware* of the *existence* of the obscure issue; then you would have had no trouble, several hundred years ago, in permitting all tort actions to be squeezed into the writ of assumpsit by the patently phony allegation that the defendant had *undertaken* (assumpsit) to be careful. Even beyond the unreliability of almost all legislative history (most of which is now cooked-up legislative history) as an indication of intent, it seems to me that asking what the legislators *intended* rather than what they *enacted* is quite the wrong question. [Address by Justice Antonin Scalia before the Attorney General's Conference on Economic Liberties in Washington, D.C. (June 14, 1986).]

Compounding the problem with the Michigan legislative histories is that, in this state, unlike the federal legislature, there is no verbatim journal of the proceedings of either house of the Legislature or of its committees. Further, unlike Congress, the Michigan House of Representatives or Senate does not vote on an acceptance of the legislative history. The creation of legislative histories are therefore free play for legislative staffers and special-interest pleaders. Their hope may well be to fill these empty vessels with potions on the chance that someday some credulous court, unaware of its dubious authenticity, may drink deeply.

interpreted as giving an unconditional right to object. *Hiltz v Phil's Quality Market,* 417 Mich 335; 337 NW2d 237 (1983).

I would uphold the constitutionality of the statute and affirm the actions of the Troy City Council, and so would reverse the trial court's order granting summary disposition to plaintiff with regard to issues II and III.