BENDIX SAFETY RESTRAINTS GROUP, ALLIED SIGNAL, INC v
CITY OF TROY

Docket No. 163811. Submitted February 22, 1995, at Detroit. Decided
January 30, 1996, at 9:10 A.M.

Bendix Safety Restraints Group, Allied Signal, Inc., brought an
action in the Oakland Circuit Court against the City of Troy,
alleging improper denial of the City of Troy's consent to a tax
abatement the City of Sterling Heights offered to Bendix to
move its facilities from the City of Troy to a location in the
City of Sterling Heights. Sterling Heights had offered Bendix
the tax abatement under the plant rehabilitation and indus-
trial development districts act, 1974 PA 198, MCL 207.551 *et
seq.*; MSA 7.800(1) *et seq.* However, under the act, the City of
Troy's consent was required before Bendix actually could be
granted the tax abatement. The Troy City Council objected and
thereby blocked the abatement, though not the move. The
court, David F. Breck, J., granted summary disposition for
Bendix. The court vacated the resolution by the Troy City
Council that had denied Bendix' request and remanded the
matter to the Troy City Council for further consideration.
Bendix appealed and the City of Troy cross appealed. After the
trial court's decision, the Court of Appeals issued its decision in
*Marposs Corp v City of Troy,* 204 Mich App 156 (1994). On
appeal, the Court of Appeals, CAVANAGH, P.J., and CONNOR and
BANDSTRA, JJ., affirmed the trial court's order to the extent
that it granted a judgment for Bendix, but reversed that
portion of the order that remanded the matter to the Troy City
Council. 211 Mich App 801 (1995). In its opinion, the Court of
Appeals noted that, while it disagreed with the majority opin-
ion in *Marposs,* it was required to follow it pursuant to Admin-
istrative Order No. 1994-4. The Court of Appeals then issued an
en banc order invoking the conflict resolution procedure of
Administrative Order No. 1994-4 and vacating its prior *Bendix*
opinion. 211 Mich App 801 (1995).

Following consideration by the special panel convened pursu-

REFERENCES

Am Jur 2d, Constitutional Law §§ 332, 335.

See ALR Index under Legislature; Separation of Powers.

ant to Administrative Order No. 1994-4, the Court of Appeals *held:*

The conflict in this case is resolved in favor of the prior opinion in this case and its reasoning and analysis is adopted. The trial court erred in ruling that the Troy City Council had improperly refused to consent to the tax abatement. The grant under MCL 207.559(2)(f); MSA 7.800(9)(2)(f) of unlimited discretion to the Troy City Council to decide whether to consent to a tax abatement is not unconstitutional. The *Marposs* case is overruled.

Reversed and remanded for entry of a judgment for the City of Troy.

O'CONNELL, J., concurring, wrote separately to address constitutional issues raised in this case. The statutory scheme involved in this case, MCL 207.551 *et seq.*; MSA 7.800(1) *et seq.,* does not contain an unconstitutional delegation of power by the Legislature to the City of Troy. It is not the responsibility of the Court of Appeals to examine the reason proffered by the City of Troy for its denial of consent for the abatement. The mechanisms by which tax exemptions or abatements shall be granted or withheld are plainly committed by the state constitution to legislative resolution. The court properly takes a deferential approach to legislative decisions, arrogating the power of review only with respect to claims that such legislative action violated some clear and established constitutional norm. Bendix had made no claim that the Troy City Council has violated a clear and established constitutional norm. A legislative body is not required to give reasons for its actions. The remedy available in this case is through the legislative process, not judicial review. No judicially cognizable interest of Bendix was violated when the Troy City Council failed to state other than political reasons in support of its decision.

MARKEY, J., concurred with Judge O'CONNELL's concurrence.

TAXATION — CONSTITUTIONAL LAW — PLANT REHABILITATION AND INDUSTRIAL DEVELOPMENT DISTRICTS ACT — OBJECTIONS TO TAX EXEMPTION — DELEGATION OF LEGISLATIVE POWER.

 The provision of the plant rehabilitation and industrial development districts act that precludes a municipality that is acquiring an eligible facility from granting a tax abatement without the consent of the municipality that is losing the facility is not an unconstitutional delegation of legislative power (MCL 207.559[2][f]; MSA 7.800[9][2][f]).

*Butzel Long* (by *James C. Bruno* and *Daniel R. W. Rustmann*), for the plaintiff.

City of Troy, Department of Law (by *Peter A. Letzmann* and *John J. Martin, III*), and *Petersen & Lefkofsky, P.C.* (by *Donald K. S. Petersen*), for the City of Troy.

Amicus Curiae:

*Miller, Canfield, Paddock & Stone, P. L. C.* (by *Joel L. Piell* and *Steven G. Cohen*), for the Michigan Municipal League.

Before: GRIBBS, P.J., and GRIFFIN, NEFF, JANSEN, FITZGERALD, MARKEY, and O'CONNELL, JJ.

PER CURIAM. Pursuant to Administrative Order No. 1994-4, this special panel was convened to resolve the conflict between the prior, vacated opinion in this case, *Bendix Safety Restraints Group, Allied Signal, Inc v City of Troy*, 211 Mich App 801; 537 NW2d 459 (1995), and *Marposs Corp v City of Troy*, 204 Mich App 156; 514 NW2d 202 (1994). In accordance with Administrative Order No. 1994-4, the prior *Bendix* panel was required to follow the precedent of *Marposs Corp, supra*. Were it not for Administrative Order No. 1994-4, the previous panel would have reversed the decision of the lower court.

Following an en banc order[1] invoking the conflict resolution procedure of Administrative Order No. 1994-4, this case was reheard by this special panel. After due consideration, we resolve the conflict in favor of the prior *Bendix* opinion. We are persuaded by the prior *Bendix* opinion and hereby adopt its reasoning and analysis. *Marposs Corp v City of Troy, supra,* is overruled.

---

[1] *Bendix Safety Restraints Group, Allied Signal, Inc v City of Troy,* 211 Mich App 801; 537 NW2d 466 (1995).

Reversed and remanded for entry of judgment for defendant, City of Troy.

O'CONNELL, J. *(concurring)*. I concur in the majority opinion. However, I write separately to address a foundational issue developed during oral argument.

Plaintiffs in both *Marposs Corp v City of Troy,* 204 Mich App 156; 514 NW2d 202 (1994), and the initial case in this action, *Bendix Safety Restraints Group, Allied Signal, Inc v City of Troy,* 211 Mich App 801; 537 NW2d 459 (1995), assert that the statutory scheme in issue, MCL 207.551 *et seq.*; MSA 7.800(1) *et seq.,* is an unconstitutional delegation of power by the Legislature to the City of Troy, a position that the majority today has properly refuted. In *Marposs,* however, this Court suggested that even if the delegation of power were constitutional, the City of Troy's actions were, nonetheless, either "arbitrary and capricious" or constituted an abuse of discretion. Plaintiff in the present case, taking its cue from *Marposs,* has also advanced this argument. While this contention is no more persuasive than the delegation challenge, it raises a significantly different issue, namely, that of separation of powers.

The statute in question, MCL 207.559(2)(f); MSA 7.800(9)(2)(f), precludes a municipality acquiring an eligible facility from granting a tax abatement without the consent of the municipality "losing" an earlier incarnation of that facility. If the "losing" municipality withholds its consent, "a copy of the resolution of denial showing reasons for the denial shall be filed within 20 days after adoption with the department of commerce."

While the statute requires that reasons be furnished in support of a denial of consent, it does not limit the basis on which such denial may be predi-

cated. For example, the Legislature did not specify that the reasons must be related to some relevant criterion, such as the economic condition of either of the municipalities involved or of their respective regions. Thus, no mandate that the grounds for denial be "reasonable" can be judicially inferred.[1]

We, accordingly, have no occasion to examine the reasons proffered by the City of Troy for its denial of consent to the abatements at issue. We note in passing that the City of Troy has chosen to focus on whether the acquiring municipality is or is not "economically depressed." However, it would be temerarious for the judiciary to purport either to grant to or to withhold from such reasoning its imprimatur, except to note that the reasoning does not facially run afoul of any constitutional prohibition or concern.

However, plaintiff vehemently argues that it is this Court's responsibility to review the City of Troy's reasons for refusing to consent to the tax abatement. Plaintiff's argument is in three parts. First, plaintiff contends that the Legislature's sole intent in enacting the consent provision of MCL 207.559(2)(f); MSA 7.800(9)(2)(f) was to permit a city to discourage proposed moves that the city determined would adversely affect its local economy. Second, a city's reasons for withholding its consent *"must,"* in accordance with the Legislature's intent, be founded upon the detrimental economic effect that the city would likely suffer should it consent to the abatement. Third, because the City of Troy's reasons for refusing to consent

---

[1] The fact that such reasons are to be reported, not to the affected municipality or to the enterprise seeking the abatement, but to the Department of Commerce, indicates that the Legislature chose to record the various rationales merely to furnish itself with a ready database on which it may, if it chooses, predicate future legislation in the area of tax policy.

to the tax abatement do not address the economic effect on the City of Troy itself, the City of Troy is claimed to have abused its discretion or, in the alternative, to have predicated its abatement decision on grounds that are "arbitrary and capricious."

Const 1963, art 3, § 2 establishes as an explicit principle of state constitutional government the separation of powers doctrine. This principle, which lies at the heart of republican government, is only implicit in the federal constitution, although as effectually important as if expressly delineated. *Prize Cases,* 67 US (2 Black) 635; 17 L Ed 459 (1863); *Plaut v Spendthrift Farm, Inc,* 514 US —; 115 S Ct 1447; 131 L Ed 2d 328 (1995).

A corollary to the separation of powers principle is the political question doctrine, which requires analysis of three inquiries: (1) Does the issue involve resolution of questions committed by the text of the constitution to the legislative or executive branches of government? (2) Would resolution of the question demand that the court move beyond areas of judicial expertise? (3) Do considerations for maintaining comity between the coordinate branches of government counsel against judicial intervention? *House Speaker v Governor,* 443 Mich 560, 574; 506 NW2d 190 (1993).

With respect to the first inquiry, questions of tax policy are committed by the text of the Michigan Constitution to the Legislature. First, Const 1963, art 4, § 1 vests the legislative power of the State of Michigan in a Senate and a House of Representatives. Const 1963, art 4, § 32 specifies the manner in which the Legislature shall enact laws imposing, continuing, or reviving taxes. Const 1963, art 9, § 2 bars the Legislature from surrendering, suspending, or contracting away the power of taxation. The judiciary is nowhere mentioned in these

constitutional provisions, nor does Const 1963, art 6, the judicial article, confer on the judicial branch any power in the sphere of taxation. Accordingly, the mechanisms by which tax exemptions or abatements shall be granted or withheld are plainly committed by the text of the constitution to legislative resolution.

Concerning the second phase of the inquiry, the judiciary certainly possesses no special expertise in matters of tax *policy*. While the judiciary is frequently called upon to construe tax legislation or to determine the scope and effect of various provisions of Const 1963, art 9, such judicial involvement is purely adjudicative.

In this case, however, Bendix asks the Court to consider the wisdom of the action of the City of Troy's withholding of its consent to allow the City of Sterling Heights to provide an incentive to Bendix to relocate its facilities by extending a tax abatement. Even the purely economic aspects of the issues thus raised are outside the expertise of the judiciary, while the weighing of the noneconomic aspects—the relative bargaining power of each of the parties, their stomach for a fight, their tenacity should impasse erupt into disagreement, the ability of the negotiators to perceive both the actual strengths and weaknesses of the other side's position and to evaluate the correlative perceptions by the other side, and the possibility of economically irrational behavior in pursuit of both economic and noneconomic principles—are matters far beyond the arena of judicial expertise.

Finally, prudential considerations militate most strongly against judicial intervention. We are not called upon to construe a statute or a constitutional provision, but, instead, to grant judicial oversight of legislative action on the basis of a standard of review—"arbitrary and capricious"—

that fairly invites disrespect for the political, and thus nonjusticiable, choices made by the local legislative body.

In effect, Bendix is suing to reverse the outcome of a political battle that it lost. See *House Speaker v State Administrative Bd*, 441 Mich 547, 561; 495 NW2d 539 (1993). Political battles, however, are fought, won, and lost in the political arena, and the judiciary has no right under the constitution to reposition the competitors, change the rules, or alter the outcome after the fact.

Less than two decades ago, the Michigan judiciary experimented with treating the actions of municipal legislative bodies as something other than legislative action. Creating a fiction that in some respects local legislative bodies, because they make an effort to find facts and apply legal standards, seem to be acting like quasi-judicial administrative bodies, the judiciary extended its reach and began reviewing such action without consideration of separation of powers principles. This brief experiment was a total failure, and the courts soon reverted to a properly deferential approach to these legislative decisions, arrogating the power of review only with respect to claims that such legislative action violated some clear and established constitutional norm. *Ed Zaagman, Inc v Kentwood*, 406 Mich 137; 277 NW2d 475 (1979).

No claim has been made by Bendix in this case that, in refusing to consent to the granting of a tax abatement by the City of Sterling Heights, the Troy City Council has violated some clear and established constitutional norm. For example, there is no assertion that the Troy City Council was adversely influenced by the race, religious affiliation, gender, or national origin of the principal corporate officers or shareholders of Bendix, or by any similar demographic data concerning the

City of Sterling Heights. Cf. *Gomillion v Lightfoot,*
364 US 339, 347-348; 81 S Ct 125; 5 L Ed 2d 110
(1960), where the United States Supreme Court
addressed a situation in which " 'acts generally
lawful may become unlawful when done to accom-
plish an unlawful end . . . and a constitutional
power cannot be used by way of condition to
obtain an unconstitutional result.' " (Citations
omitted.)

When it comes to legislative actions, the judi-
ciary has no brief that entitles it to strike down a
statute as arbitrary and capricious or an abuse of
discretion. The principle of judicial review of the
constitutionality of legislation established in *Mar-
bury v Madison,* 5 US (1 Cranch) 137; 2 L Ed 60
(1803), is constrained by the requirement that
some specific provision of the constitution be vio-
lated before a statute will be struck down. *CF
Smith Co v Fitzgerald,* 270 Mich 659, 667; 259 NW
352 (1935), app dis sub nom *CF Smith Co v
Atwood,* 296 US 659; 56 S Ct 115; 80 L Ed 470
(1935). Absent breach of some applicable clause of
the state or federal constitution, the legislative
power of the state is as broad, comprehensive,
absolute, and unlimited as that of the Parliament
of England. *Young v Ann Arbor,* 267 Mich 241,
243; 255 NW 579 (1934).[2]

---

[2] In Judge TAYLOR's dissent in *Marposs, supra,* it is intimated that,
in this situation, the City of Troy cannot arbitrarily and unreasonably
withhold its consent. 204 Mich App 166, citing *Union Twp v Mt
Pleasant,* 381 Mich 82, 89-90; 158 NW2d 905 (1968). What was
obviously meant is that the Legislature may so delimit the scope of
municipal discretion; he went on to opine that the City of Troy's
proffered rationale was not inconsistent with the Technology Park
Development Act, MCL 207.701 *et seq.;* MSA 7.800(101) *et seq.*

*Union Twp, supra,* p 90 cites *People ex rel Maybury v Mutual Gas-
Light Co of Detroit,* 38 Mich 154, 155 (1878), which in turn was a case
in which the controlling statute delegated to municipalities the au-
thority to consent to the use of public ways for the laying of utility
pipes, subject to "such reasonable regulations as they may prescribe."

Bendix takes issue with the Troy City Council's failure to proffer "pertinent" reasons, as Bendix describes them, for withholding its consent to the abatement. However, in contrast to quasi-judicial administrative agencies, which are required to furnish a statement of facts determined and legal principles applied sufficient to show the agency's reasoning and rationale for a decision, *Nunn v George A Cantrick Co, Inc,* 113 Mich App 486, 491-492; 317 NW2d 331 (1982), a legislative body need not provide reasons for its actions. Moreover, even where a legislative body gratuitously allows insight into its decision-making process in a particular instance, if the reasons underlying its decision are invalid but other conceivable reasons might have been adduced in support of such action that would be valid, the courts are obligated to presume the latter motivation and uphold the legislative choice. *Wiles v Liquor Control Comm,* 59 Mich App 321, 324; 229 NW2d 434 (1975).

It may be the case that the decision of the Troy City Council in this regard was made, not in consideration of the overall economic health of Michigan, or of Southeast Michigan, or even of the City of Troy, but on the basis of pedestrian, local, or even petty considerations.[3] That is the risk and the genius of legislative action in a representative government. The remedy for a decision that is unwise or impolitic is not judicial review, but, like the offending decision itself, political, involving a

[3] Plaintiff may well be correct in concluding that the City of Troy's reasons for failing to consent to the tax abatement are "political" and do not relate to the economic effect on the City of Troy. Plaintiff is also correct in asserting that the City of Troy "looks solely to the economic conditions of the city seeking to issue the abatement with no consideration whatsoever given to the economic effect on the City of Troy." Similarly, none dispute that the City of Troy's 1986 policy resolution expressly mandates this result. However, none of these arguments grant the judiciary jurisdiction to review political decisions of a legislative body.

resort to the ballot box or more intensive lobbying activity.

This principle was long ago recognized by Chief Justice Marshall on behalf of a unanimous Court in *Gibbons v Ogden,* 22 US (9 Wheat) 1, 197; 6 L Ed 23 (1824):

> The wisdom and the discretion of [the legislature, its] identity with the people, and the influence which [legislators'] constituents possess at election, are, in this, as in many other instances, as that, for example, of declaring war, the sole restraints on which they have relied, to secure them from its abuse. They are the restraints on which the people must often rely solely, in all representative governments.

Judicial misgivings regarding the wisdom of legislative policy do not provide a legal foundation for overriding legislative decisions. The wisdom of such policies is a political question to be resolved in a political forum. *People v Morris,* 450 Mich 316, 335; 537 NW2d 842 (1995). Merely because a decision may be an outgrowth of political posturing provides the judiciary with no warrant to fashion a remedy beyond that crafted by the Legislature. Not every perceived wrong necessarily has a judicial remedy. *Grand Traverse Co v Michigan,* 450 Mich 457, 469; 538 NW2d 1 (1995).

Accordingly, no judicially cognizable interest of Bendix was violated when the Troy City Council failed to state other than political reasons in support of its decision to withhold its consent to the granting of a tax abatement by the City of Sterling Heights. In lieu of disallowing all tax abatements for Michigan business enterprises that seek to relocate within the state rather than establish new facilities outside the state, the Legislature has balanced the need to compete with the fiscal lar-

gess of other states against the dangers of creating an economic merry-go-round within the state as enterprises move from one municipality to another simply to avoid paying taxes that support government services that benefit all. Because the Legislature has struck that balance, the local legislative body of the municipality losing a commercial facility must consent to the granting of a tax abatement for relocation of that facility to another municipality. Whether the Troy City Council was motivated by good reasons or bad, by compelling logic or sophistry, by considerations of the public good, or by parochial or even private considerations, is no concern of the judiciary, for the state Legislature must have anticipated such outcomes when it designed the abatement process in this fashion.

If the result is unpalatable or nonutilitarian, the remedy lies in a return to the Legislature for presentation of these arguments. This Court, lacking power to consider such questions, would be imprudent to entertain them substantively and impudent to express any opinion upon them. Pursuant to Const 1963, art 3, § 2, the judiciary has no legislative powers, and, thus, it cannot act as a "super legislature" to sit in review of the policy choices made by coordinate branches of government acting within their spheres of responsibility.

MARKEY, J., concurred.