583 N.W.2d 903 (1998)
230 Mich. App. 903
Sabatino FRANCIOSI, Petitioner-Appellee,
v.
MICHIGAN PAROLE BOARD, Respondent-Appellant.
Docket No. 195864.
Court of Appeals of Michigan.
Submitted March 10, 1998, at Detroit.
Decided May 26, 1998, at 9:10 a.m.
As Amended on Grant of Rehearing August 11, 1998.
Released for Publication September 10, 1998.
Neal Bush, Detroit, for Petitioner-Appellee.
Frank J. Kelley, Attorney General, Thomas L. Casey, Solicitor General, and Chester S. Sugierski, Jr., Assistant Attorney General, for Respondent-Appellant.
Before YOUNG, P.J., and MICHAEL J. KELLY and DOCTOROFF, JJ.
MICHAEL J. KELLY, Judge.
Respondent, the Michigan Parole Board, appeals by leave granted from a June 5, 1996, order of the Wayne Circuit Court remanding this matter to respondent for reconsideration. By this order, the trial court declared unconstitutional M.C.L. § 791.235(6); M.S.A. § 28.2305(6), which prohibits an attorney from representing a prisoner at a parole release hearing. The court also construed M.C.L. § 791.206(2); M.S.A. § 28.2276(2) and 1984 ACAS, R. 791.7765 as requiring that all three members of a parole board panel meet in collegial discussion before issuing a decision. Finally, the lower court held that respondent was required by M.C.L. § 791.233e(6); M.S.A. § 28.2303(6)(6) to give substantial and compelling reasons for denying petitioner, Sabatino Franciosi, parole in light of petitioner's parole guideline score, which reflected a "high probability of parole." We reverse.
*904 In November of 1992, petitioner was found guilty of sexually assaulting his nine-year-old stepdaughter. He was thereafter sentenced to four to fifteen years' imprisonment.
In July of 1995, the process to consider petitioner for parole began with the preparation of a parole eligibility report. Petitioner was interviewed by a parole board member, and a parole board agent completed a parole guideline scoresheet. Petitioner scored a "+8."[1]
On November 17, 1995, two members of the three-member parole panel voted for a twelve-month continuance on petitioner's parole petition. The third member of the panel took no action. "Insufficient progress" and the "nature of crime" were listed as the reasons for the continuance.
On December 7, 1995, petitioner filed an application for leave to appeal respondent's decision in the Wayne Circuit Court. Among other things, petitioner argued that precluding a prisoner from being represented by an attorney at the parole interview was a denial of equal protection, that the decision to grant or deny parole could not be made by only two members of the three-member panel, and that in light of his score of "+8" on the parole guideline scoresheet, respondent was required to provide substantial and compelling reasons for denying petitioner parole. Leave to appeal was granted to petitioner on or about March 29, 1996.
In an opinion dated June 5, 1996, the lower court found that because there was no rational basis for excluding licensed attorneys from participating in the parole interview, M.C.L. § 791.235(6); M.S.A. § 28.2305(6) was unconstitutional. The court also found that respondent's practice of allowing two members of a three-member board to decide a prisoner's eligibility for parole violated Rule 791.7765. Finally, the court found that respondent was required, but failed, to state substantial and compelling reasons for its denial of parole. In an order dated June 5, 1996, the lower court indicated as follows: The court remands this matter for a new interview before a three member panel at which [petitioner] may be represented by an attorney. The interview shall occur within 30 days of the date of this order. Within 60 days of entry of this order, the Board shall parole [petitioner] or if [petitioner's] parole is denied, the respondent shall state substantial and compelling reasons in writing for its denial.
Respondent's subsequent application for leave to appeal to this Court was granted on November 1, 1996. No stay of proceedings was granted by this Court.
While respondent's appeal was pending, presumably pursuant to the lower court order requiring another parole review, respondent[2] reconsidered petitioner's parole and issued a decision denying parole on November 21, 1996. The "notice of action by parole board" provided as follows:
After conducting the interview and considering the results of the psychological evaluation the board lacks reasonable assurance that the prisoner will not become a menace. Specifically it is unclear if he poses a risk to minor females as a sexual deviant pedophile as suggested by the crime, the pattern of abuse and information relative to sexual fantasies of the victim, or in the alternative if the crime is a result of anger directed towards the prisoner's ex-wife and represents him striking out at her. Given the equivocation, the Parole Board views society is better protected if the prisoner is continued until a therapy program is completed and the Board can discuss its findings with the prisoner.
On appeal, respondent first argues that the trial court erred in concluding that the statutory preclusion of attorneys from parole interviews found in M.C.L. § 791.235(6); M.S.A. § 28.2305(6)[3] violated the Equal Protection *905 Clauses of the federal and state constitutions, U.S. Const. Am. XIV; Const. 1963, art. 1, § 2. Petitioner argued to the lower court that M.C.L. § 791.235(6); M.S.A. § 28.2305(6) was unconstitutional because it treated attorneys, as a class, differently from the public at large and that there was no rational reason for this disparate treatment. The lower court agreed, finding that the classification was "entirely arbitrary." Whether the statutory preclusion of attorneys from parole interviews is violative of equal protection is an issue of first impression in the state of Michigan.
When a legislative classification is challenged as being violative of equal protection, the validity of the classification will be measured by this Court employing one of three tests. People v. Pitts, 222 Mich.App. 260, 272, 564 N.W.2d 93 (1997). Which test will be applied is dependent upon the type of classification and the nature of the interest affected. Id. at 273, 564 N.W.2d 93. When the legislation at issue creates an inherently suspect classification, such as race, alienage, ethnicity, and national origin or affects a fundamental interest, the "strict scrutiny" test applies. The "substantial relationship" test is applied to other classifications that are suspect, but not inherently suspect, such as gender and mental capacity. The "rational basis" test is applied when the classification is not inherently suspect, or a fundamental interest is not involved. Id.
Because attorneys are not a suspect class and an attorney's participation in a client's parole interview is not a fundamental interest,[4] we agree with the lower court's determination that the rational basis test should be applied in this case. Under the rational basis test, the legislation is presumed to be constitutional and the party challenging the statute has the burden of proving that the legislation is arbitrary and thus irrational. People v. Sleet, 193 Mich. App. 604, 607, 484 N.W.2d 757 (1992). "Under this test, a statute will be upheld if the classification scheme it has created is rationally related to a legitimate governmental purpose." Pitts, supra at 273, 564 N.W.2d 93.
Contrary to the lower court's findings, we believe that the preclusion of attorneys from a parole interview is rationally related to a legitimate governmental purpose. Clearly, the purpose of the interview is to assess a prisoner's readiness for parole. Such an evaluation can best be achieved by hearing the inmate's own words, unguided by the presence or promptings of counsel, and particularly without a formalization of the interview process through objections of a technical nature. In other words, the goal of assessing an inmate's readiness for parole can best be achieved in a system that fosters openness, sincerity, and candor. Permitting attorneys to attend and represent the prisoner, realistically, would impede this goal. Any argument that a prisoner's demeanor would not be influenced by the attendance of legal counsel is disingenuous.
Our conclusion is bolstered by Holup v. Gates, 544 F.2d 82 (C.A.2, 1976). With regard to Connecticut's parole board policy of excluding attorneys at parole hearings, the Holup court indicated as follows:
The justification advanced by the Board for excluding counsel or counsel-substitute from the hearing itself is quite reasonable: The purpose of the hearing in the Connecticut system is to enable the members personally to speak with and observe the inmate, to determine his attitude towards his crime, readiness for parole and the like. The members feel that this can best be achieved by hearing the inmates' own words, unguided by the presence or promptings of counsel. We find the state's interest in excluding persons other than the inmate from the hearing outweighs the *906 "need for and usefulness" to the inmate of having such a representative despite the inmate's concededly great interest in the decision being made. [Id. at 84.]
Further, we note that that statutory classification also is rationally related to legitimate economic considerations. If an inmate were permitted to have an attorney represent him at the parole hearing and could afford to do so, the argument could be made that if affluent prisoners could be represented by retained counsel at parole interviews, then indigent prisoners would be entitled to counsel at public expense. See Douglas v. California, 372 U.S. 353, 358, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963). Providing such representation to indigent inmates would be a significant economic burden on the state and it would be reasonable for the state to seek to avoid such a burden.
In sum, we conclude that the lower court erred in holding that M.C.L. § 791.235(6); M.S.A. § 28.2305(6) was unconstitutional. The statutory provision, being rationally related to legitimate governmental purposes, is not violative of equal protection.
The remaining issues raised by respondent are moot. As set forth above, after this Court granted respondent's application for leave to appeal, because there was no stay of proceedings, respondent once again considered petitioner's eligibility for parole. Although respondent once again denied parole to petitioner, it did so only after consideration by all three members of the panel and after setting forth in great detail its reasons for denying parole. Consequently, because a three-member panel evaluated petitioner's eligibility for parole and provided detailed reasons for its decision to deny parole, we need not address whether parole eligibility must be considered by all three members of the panel or whether respondent was required to state substantial and compelling reasons for denying petitioner parole.
Reversed.
YOUNG, Presiding Judge (concurring).
I concur in the majority's amended opinion concerning the resolution of the constitutional claim. I write separately to indicate that I reach by slightly different route the conclusion that the parole board may legally continue the practice of permitting two of three members of a parole board panel to decide parole eligibility without meeting for collegial discussion.
I agree with the majority that it is appropriate to address the parole board's claim that the trial court erred in concluding that the parole board's practice of deciding parole eligibility on the basis of a "noncollegial" vote of two members of a three-member panel was violative of M.C.L. § 791.206(2); M.S.A. § 28.2776(2) and 1996 AACS, R. 791.7765. Although moot in this case, the legitimacy of this practice presents a recurring question that may evade appellate review. See In re Midland Publishing, 420 Mich. 148, 152 n. 2, 362 N.W.2d 580 (1984).
However, I conclude that' the parole board's practice is lawful solely because it is entirely consistent with the text of the relevant statute and administrative rule. Our role in considering such matters is to determine the legislative (or administrative) intent by construing the text and giving its words their reasonable meaning. Lorencz v. Ford Motor Co., 439 Mich. 370, 376-377, 483 N.W.2d 844 (1992). Once we have done so, and if we find the text unambiguous, our task in construing a statute is at an end and we must simply apply the statute to the situation at hand. Turner v. Auto Club Ins. Ass'n, 448 Mich. 22, 27, 528 N.W.2d 681 (1995).
Nothing in the statute or administrative rule precludes the parole board's stated practice. Consequently, I find it unnecessary to consider nontextual bases for reversing the trial court's contrary decision and would reverse solely on the basis that the practice is allowed by the terms of the statute and implementing administrative rule.[1]
NOTES
[1] Apparently, a score equal to or greater than "+4" classifies a prisoner as having a "high probability of parole."
[2] This time, all three members of the three-member panel considered petitioner's eligibility for parole.
[3] M.C.L. § 791.235(6); M.S.A. § 28.2305(6) provides in pertinent part as follows:

A prisoner may waive the right to an interview by 1 member of the parole board. The waiver of the right to be interviewed shall be given not more than 30 days after the notice of intent to conduct an interview is issued and shall be made in writing. During the interview held pursuant to a notice of intent to conduct an interview, the prisoner may be represented by an individual of his or her choice. The representative shall not be another prisoner or an attorney. A prisoner is not entitled to appointed counsel at public expense. The prisoner or representative may present relevant evidence in support of release.
[4] "Fundamental interests include the right to vote and travel, due process in criminal matters, and specific guarantees in the bill of rights." In re Contempt of Stone, 154 Mich.App. 121, 128, 397 N.W.2d 244 (1986).
[1] The majority relies upon "legislative history" in support of its conclusion. I have questioned elsewhere the folly of this approach to statutory construction. My criticism bears repeating here:

It has been observed in the federal context that resort to "legislative history" in the search for legislative intent is a perilous venture. Marposs Corp. v. Troy, 204 Mich.App. 156, 167-168, n. 2, 514 N.W.2d 202 (1994) (Taylor, P.J., dissenting), quoting Address by Justice Antonio Scalia before the Attorney General's Conference on Economic Liberties (June 14, 1986). This enterprise is doubly fraught with danger in Michigan which, unlike Congress, has failed to create an authoritative legislative record. Id. [People v. Tolbert, 216 Mich.App. 353, 360 n. 5, 549 N.W.2d 61 (1996).]
Moreover, I question whether the "practice" at issue constitutes an "interpretation" or "construction" of a regulatory statute to which we ordinarily give deference. To the contrary, I am unable to discern from the parole board chairman's "affidavit" whether the parole board has actually considered the proper interpretation of M.C.L. § 791.206(2); M.S.A. § 28.776(2).