MARKMAN, J.
(concurring in part and dissenting in part). This case involves an indoor-air regulation proposed by Northwest Michigan Community Health Agency (NMCHA) (a four-county district health department) that, pursuant to MCL 333.2441(1), became effective after it was approved by the corresponding four county boards of commissioners. The first part of the regulation imposes a broad ban on smoking in public and private workplaces, including business vehicles occupied by more than one person, and requires any business (excluding restaurants) that provides a designated smoking area to do so in a separate enclosed area that is independently ventilated. The second part of the regulation prohibits an employer from taking an adverse employment action against a person who asserts the right to a smoke-free environment, and creates a private right of action by such person against his or her employer.
After this regulation was approved, plaintiff business owners in the affected counties filed an action for declaratory relief, arguing that the NMCHA lacked the authority to enact such a regulation and that the regulation was preempted by the less restrictive Michigan Clean Indoor Air Act, MCL 333.12601 et seq. Plaintiffs also argued that the regulation was invalid because it impinged on an employer’s common-law right to discharge an at-will employee. Plaintiffs’ motion for summary disposition was denied by the trial court, and they appealed.
The Court of Appeals upheld the regulation in a published opinion. McNeil v Charlevoix Co, 275 Mich App 686; 741 NW2d 27 (2007). The Court concluded that the NMCHA possessed the authority to adopt the regulation and that the regulation was not preempted *101 by the Michigan Clean Indoor Air Act. The Court also held that the regulation’s restriction on an employer’s general right to discharge an at-will employee did not violate Michigan’s “at-will” employment doctrine because it fell within exceptions to that doctrine set forth in Suchodolski v Michigan Consolidated Gas Co, 412 Mich 692, 694-695; 316 NW2d 710 (1982).
We granted leave to appeal and asked the parties to brief
(1) whether the local health department or the county board of commissioners, the entity vested with final authorization of the regulation, MCL 333.2441(1), can create a right or private cause of action against a private entity that alters Michigan’s at-will employment doctrine; (2) whether the right or private cause of action created by Clean Indoor Air Regulation § 1001 [sic: 1011] falls within the exceptions set forth in Suchodolski v Michigan Consolidated Gas Co, 412 Mich 692 (1982), to Michigan’s at-will employment doctrine; and (3) whether the exceptions to Michigan’s employment at-will doctrine set forth in Suchodolski on the basis of “public policy” are consistent with this Court’s decision in Terrien v Zwit, 467 Mich 56 [648 NW2d 602] (2002). [482 Mich 1014 (2008).]
In addition, I separately requested the parties to brief “whether, under relevant legal and constitutional principles, MCL 333.2441(1) properly delegates authority to Charlevoix County and the [NMCHA] to promulgate the regulations at issue in this case.” Id. at 1015.
Rather than writing an opinion of its own addressing the issues we asked the parties to brief, the majority has adopted the Court of Appeals opinion verbatim (except that the preemption analysis has been excluded). As a result, the majority opinion only peremptorily addresses the first and third issues that we specifically asked the parties to brief in response to the Court of Appeals opinion.
*102 I concur with the majority’s conclusion that the four county boards of commissioners acting in conjunction with the NMCHA possessed the authority to adopt that part of the clean indoor air regulation that restricts smoking and that such regulation is not preempted by the Michigan Clean Indoor Air Act. I dissent, however, from the conclusion that the part of the regulation that creates a private cause of action against employers is valid. Rather, I would hold that a county board of commissioners cannot create a private cause of action against a private entity that alters Michigan’s at-will employment doctrine. I also dissent from the conclusion that the part of the regulation that restricts smoking fits within one of the Suchodolski exceptions to at-will employment. I would not extend the Suchodolski exceptions to the at-will employment doctrine to the circumstances of this case.
I. NON-DELEGATION
The parties were asked to brief whether the regulation was enacted pursuant to a proper delegation of legislative authority. As explained in Taylor v Gate Pharmaceuticals, 468 Mich 1, 10; 658 NW2d 127 (2003), and Blue Cross & Blue Shield v Governor, 422 Mich 1, 51-55; 367 NW2d 1 (1985), the Legislature may not delegate its legislative power to the executive branch. The Legislature may, however, delegate a task to an executive branch agency if it provides “sufficient standards.” Taylor, supra at 10 n 9. Such accompanying standards are essentially viewed as transforming an improper delegation of legislative power into a proper exercise of executive power. See BCBSM, supra at 51.
The regulation at issue here was adopted pursuant to MCL 333.2441(1), which provides in relevant part:
*103 A local health department may adopt regulations necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department. The regulations shall be approved or disapproved by the local governing entity. The regulations shall become effective 45 days after approval by the local health department’s governing entity or at a time specified by the local health department’s governing entity. The regulations shall be at least as stringent as the standard established by state law applicable to the same or similar subject matter.[1]
Plaintiffs contend that this provision does not include sufficient legislative standards or guidance for the enactment of regulations and thus amounts to an improper delegation of legislative authority. I believe that the non-delegation doctrine is ultimately inapplicable in this case. This is because the provision specifies that “[t]he regulations shall be approved or disapproved by the local governing entity,” and the regulation only becomes effective “after approval” by the governing entity. That is, a local health department regulation does not become effective unless it is approved by the local governing entity, which in this case is the county boards of commissioners. Thus, the provision contemplates a two-step process: first, the local health department proposes a regulation and, second, the local governing entity approves the regulation. Only then does the regulation take effect. When the elected county boards of commissioners approved this regulation, they were acting pursuant to their own legislative powers as the governing entities of their respective local jurisdictions. The non-delegation doctrine does not apply to the proper exercise of legislative power by a legislative body. *104 See Bendix Safety Restraints Group v City of Troy, 215 Mich App 289; 544 NW2d 481 (1996), adopting the dissent from Marposs Corp v City of Troy, 204 Mich App 156; 514 NW2d 202 (1994) (holding that actions taken by a city council pursuant to a statute do not violate the non-delegation doctrine because a city council exercises legislative, not executive, power). Thus, when the elected and accountable boards of commissioners approved the regulation, notwithstanding that the regulation originated with the unelected and unaccountable health department, they were exercising their own legislative powers and were unaffected by the non-delegation doctrine.
Therefore, I believe that the principal question here is not whether the regulation was enacted pursuant to an improper delegation of legislative authority, but whether the county boards of commissioners, acting in conjunction with the NMCHA, possessed the legislative authority to adopt the regulation.
II. AUTHORITY
Plaintiffs argued below that the NMCHA lacked the authority to adopt the regulation because its smoking restrictions are stricter than those permitted under the Michigan Clean Indoor Air Act.[2] The trial court and the Court of Appeals disagreed, and I concur with those courts’ conclusions, although on the basis of a different rationale.
*105 In the course of concluding that the NMCHA and the county boards of commissioners possessed the authority to enact the regulation, the Court of Appeals cited among other things: (1) MCL 333.2433(1), which charges local health departments to “continually and diligently endeavor to prevent disease, prolong life, and promote the public health through organized programs”; (2) MCL 333.2435(d), which provides that a local health department may “[a]dopt regulations to properly safeguard the public health”; and (3) MCL 333.2441(1), which authorizes the adoption of regulations that “are necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department.” After additionally noting that MCL 333.1111(2) provides that the Public Health Code is to be “liberally construed for the protection of the health, safety, and welfare of the people of this state,” the Court of Appeals concluded that these statutes evinced a legislative intent to permit the instant regulation.
I agree with the Court of Appeals that the boards of commissioners, acting in conjunction with the NMCHA, possessed the authority to adopt the part of the regulation that restricts smoking. MCL 333.2435(d) specifically provides that a local health department may adopt “regulations to properly safeguard the public health . .. .” This provision granted the authority to adopt the part of the clean indoor air regulation that restricts smoking. MCL 333.2441(1) further provides that a local health department “may adopt regulations necessary or appropriate to implement or carry out the duties or functions vested by law in the local health department,” and protecting the public’s health, including through the implementation of an anti-smoking regulation if that is a local health department’s determination, would clearly seem to be a responsibility *106 vested in such departments. And, the regulation is consistent with MCL 333.2433(1), at least to the extent it is designed to “prevent disease, [and] prolong life.” The only limitation that the Legislature placed on the promulgation of such a regulation by a local health department, and the corresponding board of commissioners, is that it “be at least as stringent as the standard established by state law applicable to the same or similar subject matter.” MCL 333.2441(1). The regulation of smoking here is clearly more stringent than the Michigan Clean Indoor Air Act and thus satisfies this limitation.[3]
III. PRIVATE CAUSE OF ACTION
Section 1011 of the regulation provides that “no person or employer shall discharge, refuse to hire or in any manner retaliate against any employee, applicant for employment or customer because such employee, applicant or customer exercises any right to a smoke-free environment afforded by the regulation.” Section 1010(F) provides that a “private citizen may bring legal action to enforce this regulation.” And § 1012(F) provides that “an employee or a private citizen may bring legal action to enforce this regulation.” The lower courts implicitly concluded that the private cause of action created by this regulation is valid. I respectfully disagree and would hold *107 that a county board of commissioners cannot create a private cause of action that is in contravention of Michigan’s “at-will” employment doctrine.
The majority concludes that the local health department acting in conjunction with the county board of commissioners can create a right or private cause of action against a private entity that alters Michigan’s at-will doctrine. The majority also concludes that the private cause of action created by the regulation is encompassed by the Suchodolski exceptions to the at-will doctrine.
“Boards of supervisors shall have legislative, administrative and such other powers and duties as provided by law.” Const 1963, art 7, § 8. Local governments, including counties, have no inherent authority to enact laws or to promulgate regulations because they are governments of limited powers acting pursuant to delegated authority. City of Kalamazoo v Titus, 208 Mich 252, 262; 175 NW 480 (1919), quoting 1 Cooley, Constitutional Limitations (7th ed), pp 163, 264 ff. A county board of commissioners may not exercise a power not vested in it by statute. Pittsfield School Dist No 9 v Washtenaw Co Bd of Supervisors, 341 Mich 388, 398; 67 NW2d 165 (1954). A county can exercise only such authority as is expressly or impliedly granted by a superior level of government, and always subject to such restrictions as are annexed to the grant. Id.
The Legislature granted authority in MCL 46.11(j) to county boards of commissioners to
pass ordinances that relate to county affairs and do not contravene the general laws of this state or interfere with the local affairs of a township, city, or village within the limits of the county, and pursuant to section 10b provide suitable sanctions for the violation of those ordinances. [Emphasis added.]
*108 Section 10b, MCL 46.10b, authorizes a county board of commissioners to make a violation of an ordinance an infraction that subjects an offender to imprisonment for not more than 90 days or a fine of not more than $500. A county board of commissioners is also authorized to approve a local health department regulation that is “at least as stringent as the standard established by state law.” MCL 333.2441(1).
In my judgment, the part of the regulation that allows an employee to bring a legal action to enforce the regulation is beyond the authority of a county board of commissioners to enact. This is because it contravenes the law of at-will employment in this state. The general rule is that “in the absence of a contractual basis for holding otherwise, either party to an employment contract for an indefinite term may terminate it at any time for any, or no, reason.” Suchodolski, supra at 694-695. See also Rood v Gen Dynamics Corp, 444 Mich 107, 116; 507 NW2d 591 (1993).
The instant regulation would limit an employer’s ability to terminate an at-will employee by creating a new private cause of action by any employee against his employer for wrongful discharge for asserting a right “afforded by the regulation.” Thus, the regulation contravenes the general law of this state, the at-will employment doctrine, and the county boards of commissioners simply do not possess the authority to act in such disregard.[4]
*109 Moreover, the fact that MCL 46.10b authorizes a county board to enact an ordinance and to provide for a fine of no more than $500 or imprisonment of no more than 90 days lends further support to the conclusion that the creation of a private cause of action for the violation of an ordinance is beyond the powers of a county board.[5] This is because the express mention of one thing in a statute generally implies the exclusion of similar things. Pittsfield Charter Twp v Washtenaw Co, 468 Mich 702, 712; 664 NW2d 193 (2003). That is, the listing of allowable sanctions for the violation of a local *110 ordinance implies that non-listed sanctions are not allowable. See, e.g., Saginaw Co v John Sexton Corp of Michigan, 232 Mich App 202, 225; 591 NW2d 52 (1998), which invalidated the penalty provisions of a county ordinance because they exceeded the $500 limit set forth in MCL 46.10b(l). Thus, even if the regulation did not contravene the general rule of at-will employment, which I believe it does, I would nonetheless conclude that a county board may not create a private cause of action against a private entity simply because they have not been given the authority to do so.[6]
*111 IV SUCHODOLSKI
The majority holds that the smoking restriction of the regulation was encompassed within the Suchodolski “public policy” exceptions to Michigan’s at-will employment doctrine. I reject this conclusion and also would not extend these exceptions to include regulations that do not apply statewide.
In Suchodolski, this Court recognized exceptions to the at-will doctrine “based on the principle that some grounds for discharging an employee are so contrary to public policy as to be actionable.” Id. at 695.[7] The Court cited as the circumstances in which such exceptions would apply those involving: (1) “adverse treatment of employees who act in accordance with a statutory right or duty,” (2) an employee’s “failure or refusal to violate a law in the course of employment,” or (3) an “employee’s exercise of a right conferred by a well-established *112 legislative enactment.” Suchodolski, supra at 695-696. Importantly, in Dudewicz v Norris Schmid, Inc, 443 Mich 68, 80; 503 NW2d 645 (1993),[8] the Court limited *113 Suchodolski, stating that a public policy claim is only *114 sustainable when there is no statutory prohibition against discharge in retaliation for the conduct at issue.[9]
The majority holds that “ ‘the regulation’s restriction of the general right to discharge an employee at will is consistent with the exceptions to that doctrine set forth in Suchodolski.’ ” Ante at 79.[10]1 disagree for *115 two reasons. First, I would not extend the Suchodolski exceptions to include a local regulation that conflicts with our statewide public policy. The Suchodolski exceptions refer to a “statutory right or duty,” a “law,” and “well-established legislative enactment [s].” The instant regulation at issue is not a statute, and it is not a “well-established legislative enactment.” Nor is a county board “the Legislature,” although it is a legislative body. While the regulation constitutes the “law” in the four counties, it does not constitute the “law” in any other Michigan counties, much less in all the other Michigan counties. Moreover, the public policy reflected in the regulation is stricter than the public policy established by our Legislature in the Michigan Clean Indoor Air Act and that now applies in all other counties. That is, while the regulation does reflect the public policy of the four counties that enacted it, it cannot, in my judgment, be fairly said to reflect the public policy of the state of Michigan. I would not extend the Suchodolski exceptions beyond the limits of statewide public policy, at the very least where a local regulation is more restrictive or burdensome than our default statewide public policy. It is one thing for a private employer to be legally accountable for a wrongful discharge that violates a statewide public policy as in Suchodolski, but it is considerably more burdensome to subject employers to wrongful discharge lawsuits for a termination that arguably only violates a local public policy, given that all *116 83 counties could theoretically adopt varying local public policies.[11] Justice CAVANAGH contends that under Suchodolski “there is no reason to differentiate a legally recognized right or duty created by a state statute and a legally recognized right or duty created by local law.” Ante at 90 n 4. I disagree. Indeed, the use of the modifier “well-established” in Suchodolski in describing the kind of “legislative enactment” that would serve as the foundation for its third exception further indicates that Suchodolski itself was attempting to draw distinctions between types of legislative enactments, possibly in order to ensure the kind of notice that would be much more effectively communicated to an employer doing business in multiple counties throughout the state by a statewide statute than by a local regulation.[12]
Second, each Suchodolski exception requires a valid “statutory right or duty,” a “law,” or a “well-established legislative enactment” before it is applicable. As previously explained, that part of the regulation that purports to create a private cause of action against private entities is invalid because it exceeds the authority that MCL 46.11(j) grants a county board. Thus, I do not join the majority in its exercise of this Court’s common-law *117 powers to extend the exceptions of Suchodolski to local regulations.[13]
Anticipating that this Court might conclude that the private cause of action provisions of the regulation are invalid, defendants point out that the regulation has a severability clause[14] and argue that even if that part of the regulation that restricts an employer’s general “at will” authority to discharge an employee is invalid, the remaining part of the regulation that restricts smoking would still be enforceable pursuant to the Whistleblowers’ Protection Act (WPA), MCL 15.361 et seq., because the regulation comes within the WPA’s prohibition against discriminating against an employee for reporting a violation of a regulation promulgated by a political subdivision of the state.
MCL 15.362 provides:
*118 An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee’s compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is requested by a public body to participate in an investigation, hearing, or inquiry held hy that public body, or a court action. [Emphasis added.]
Defendants argue that the regulation here clearly comes within the language “law or regulation or rule promulgated pursuant to a law of this state, [or] a political subdivision of this state” in the WPA. Thus, defendants contend that the regulation may be enforced by a plaintiff under the WPA- Because this argument was not considered by the trial court or the Court of Appeals, I would remand to the Court of Appeals to consider this issue in the first instance. If defendants are correct that the regulation is enforceable under the WPA, then the Dudewicz limitation, to wit, that a public policy claim is only sustainable when there is no applicable statutory prohibition against discharge in retaliation for the conduct at issue, would apply because the WPA would constitute an applicable statutory prohibition against discharge in retaliation for the conduct at issue.
Finally, to the extent that plaintiffs’ arguments suggest that the part of the regulation that restricts smoking more stringently than the Michigan Clean Indoor Air Act is “unwise” and results in “bad policy,” these concerns must be addressed to the Legislature or the county boards of commissioners. People v Kirby, 440 Mich 485, 493-494; 487 NW2d 404 (1992). See also *119 Halloran v Bhan, 470 Mich 572, 579; 683 NW2d 129 (2004). Plaintiffs, of course, are also free to pursue remedies through the electoral and political processes.[15]
V CONCLUSION
I agree with the majority that the NMCHA, acting in conjunction with the local boards of commissioners, possesses the authority to enact that part of the regulation that restricts smoking “at least as stringently” as the Michigan Clean Indoor Air Act, and this regulation is not preempted by the Michigan Clean Indoor Air Act. I dissent, however, from the majority’s implicit ruling that the part of the regulation that creates a private cause of action against private employers is valid. I would hold instead that MCL 46.11(j) precludes a county board of commissioners' from creating a private cause of action against a private entity that alters Michigan’s “at-will” employment doctrine. I also dissent from the conclusion that the part of the regulation that restricts smoking fits within one of the Suchodolski exceptions to “at-will” employment, and I would not extend the Suchodolski exceptions to include local regulations, at the veiy least where such regulations conflict with statewide public policy. Finally, I would remand to the Court of Appeals to consider in the first instance whether an employee could file a cause of action under the WPA to enforce his or her rights under the part of the regulation that restricts smoking.
Corrigan and Young, JJ., concurred with Markman, J.

 This provision is part of the Public Health Code, as is the Michigan Clean Indoor Air Act. Accordingly, MCL 333.2441(1) authorizes regulations addressing any matter that comes within the Public Health Code and is not limited to smoking regulations.

 MCL 333.2441(1) specifically states that a local health department regulation “shall become effective 45 days after approval by the local health department’s governing entity.. . .” Given that the regulation would have no effect unless the county boards of commissioners had approved it, we are effectively reviewing a county regulation, notwithstanding the fact that the regulation may have originated in a local health department.

 The parties agree that the regulation restricts smoking in a greater range of public and private places than the Michigan Clean Indoor Air Act. For example, the regulation applies to business vehicles occupied by more than one person whereas the state statute does not. The regulation also imposes greater obligations on businesses than the state statute. For example, MCL 333.12605(1) provides that if an owner designates a smoking area, “existing physical barriers and ventilation systems shall be used to minimize the toxic effect of smoke in both smoking and adjacent nonsmoking areas.” In contrast, § 1008(6) of the regulation requires a separate enclosed area that is “independently ventilated” if an owner designates a smoking area.

 While MCL 333.2441(1) does authorize a county board of commissioners to approve a health department regulation that is “at least as strict as state law,” it does not at the same time countermand the general limitation in MCL 46.11(j) that a county board may not act in derogation of the general laws of this state in non-health-related areas. The at-will employment doctrine is obviously a fundamental aspect of the employment law of this state. The Legislature did not confer authority upon county boards to enact regulations contrary to Michigan’s at-will employ *109 ment doctrine. Contrary to Justice Cavanagh’s suggestion, ante at 94 n 7, I do not contend that the regulation contravenes the general laws of this state merely because it is a local regulation.
The majority briefly discusses Mack v Detroit, 467 Mich 186, 189; 649 NW2d 47 (2002), and correctly notes that Mack declined to address whether a city can create a private cause of action against a nongovernmental entity. But, Mack merely states that it “does not address whether a city can create rights, protect against discrimination, or create a cause of action against a nongovernmental entity.” Id. at 197 n 12 (emphasis omitted). Such language hardly suggests that a county, in contravention of the laws of this state, can create a new private cause of action against an individual or business.
Similarly, the majority states several times that the county hoards in enacting the instant regulation were acting as local “legislative bodies.” I agree and have so stated. See, e.g., infra at 115 (“a county board ... is a legislative body”). But the issue here is only whether the anti-retaliation portion of the regulation exceeds the authority given to the boards by the Legislature. The majority devotes its efforts to an undisputed point, when there is a disputed point that merits analysis.

 Justice Cavanagh contends in his concurrence that a county board of commissioner’s power to create a private right of action is “fairly implied by the relevant law delegating authority to boards of commissioners.” Ante at 97. I disagree. Counties have no inherent authority, being governments of limited powers. Pittsfield School Dist No 9, supra at 398. The power to create a private cause of action is not expressly given, and such power is impliedly denied, to counties, as explained earlier, given that they are only expressly allowed to enact ordinances that provide for up to 90 days in a jail and up to a $500 fine.

 Justice Cavanagh states that §§ 1010(F) and 1012(F) of the regulation “do not necessarily contravene the general laws of this state.” Ante at 99. He rejects my argument that the limits on sanctions a hoard of commissioners may adopt found in MCL 46.10b (a fine of no more than $500 or imprisonment of no more than 90 days) imply the absence of authority to create a private cause of action. Justice Cavanagh asserts that these limitations do not conflict with §§ 1010(F) and 1012(F) because these sections “do not expressly create any additional penalties beyond those applicable for a violation” of the regulation and thus do “not necessarily... enhance the extent to which remedies are available.” Ante at 98.1 disagree. Sections 1010(F) and 1012(F) authorize a private party to bring a legal action against a business. Justice Cavanagh is apparently suggesting that a judge, as a result of such a civil action, would only be able to impose a remedy consistent with MCL 46.10b(l), although this is nowhere made clear in either Justice Cavanagh’s statement or in §§ 1010(F) and 1012(F) themselves. Indeed, given that incarceration of up to 90 days would not even be possible in a civil lawsuit, it is by no means obvious why these regulations could be said to “incorporate” the sanctions of MCL 46.10b(l). Moreover, how clear is it that the trial court would not have available traditional civil remedies under §§ 1010(F) and 1012(F), such as injunctive or equitable relief? There is simply no basis in either the opinion of this Court or in the laws themselves to suggest that what Justice Cavanagh asserts has any basis whatsoever. Perhaps what is most significant is the reality that a fine under MCL 46.10b(l) would be payable to the county while a civil judgment issued under §§ 1010(F) and 1012(F) would be payable to the plaintiff. This incentive for private citizens to sue, in combination with the fact that such a lawsuit could be brought by any private citizen, or by many private citizens, could easily be viewed as creating a substantially more onerous burden on an individual business, and therefore a substantially more effective remedy *111 for a violation of the statute, than the possibility only of being charged with an ordinance violation by a local prosecutor who almost certainly will be burdened by the need to address more serious criminal violations. For this reason, I believe that the authorization of a private lawsuit, in addition to the relief provided under MCL 46.10b(l), can fairly be said to expand the available remedies for a violation of the statute and thereby contravene the general laws of this state.

 We asked the parties to brief whether the Suchodolski exceptions are consistent with this Court’s decision in Terrien v Zwit, 467 Mich 56; 648 NW2d 602 (2002). Suchodolski used the following terms to identify public policy: “a statutory right or duty,” “a law,” and a “well-established legislative enactment.” Suchodolski, supra at 695-696. In Terrien, this Court indicated that in determining public policy, the focus of the judiciary must ultimately be on the policies that, in fact, have been adopted by the public through our various legal processes and that are reflected in our state and federal constitutions, our statutes, the common law, and administrative rules and regulations. Terrien, supra at 67 n 11. I believe the Suchodolski exceptions are compatible with Terrien because both cases indicate that “public policy” is to be discerned, not in the personal attitudes of judges, but in objective and verifiable sources of the law.

 Dudewicz was overruled in part on other grounds by Brown v Detroit Mayor, 478 Mich 589; 734 NW2d 514 (2007). The majority fails adequately to address Dudewicz. First, the majority says the non-retaliation portion of the regulation does not violate Michigan’s at-will employment doctrine because it fits within the Suchodolski exceptions, but then it contradictorily argues that Dudewicz is irrelevant because the Whistle-blowers Protection Act (WPA) does not negate the authority granted by the Legislature. See ante at 86. Under Dudewicz, if the regulation is enforceable under the WPA then a Suchodolski public policy claim does not exist. While Justice CAVANAGH reads Dudewicz differently than I do, he nonetheless recognizes that “there are circumstances under which § 1011 of the [regulation] would be preempted by the WPA and in those cases, under Dudewicz, the public-policy exception to the general rule of at-will employment would not apply.” Ante at 92 n 5.
However, Justice Cavanagh contends that Dudewicz is “generally inapplicable here because the [regulation] does not necessarily create an exclusive remedial scheme that preempts applicable common-law claims, if such claims exist,” ante at 92 n 5, and that “Dudewicz limits the first Suchodolski example of a public-policy exception to the at-will employment rule only where a legislative enactment has not only explicitly prohibited the discharge of an employee acting in accordance with a statutory right or duty, but also provided an exclusive remedy for violation of that explicit prohibition,” ante at 90-91 n 5. Finally, he indicates that he would overrule the Court of Appeals opinion in Vagts v Perry Drug Stores, Inc, 204 Mich App 481; 516 NW2d 102 (1994), to the extent it holds otherwise. Ante at 91 n 5.1 believe that Justice Cavanagh has misread Dudewicz. The key part of that case states:
In those cases in which Michigan courts have sustained a public policy claim, the statutes involved did not specifically proscribe retaliatory discharge. Where the statutes involved did proscribe such discharges, however, Michigan courts have consistently denied a public policy claim.... A public policy claim is sustainable, then, only where there also is not an applicable statutory prohibition against discharge in retaliation for the conduct at issue. As a result, because the WPA provides relief to Dudewicz for reporting his fellow employee’s illegal activity, his public policy claim is not sustainable. [Dudewicz, supra at 79-80.]
Section 1011 of the regulation specifically proscribes a retaliatory discharge against an employee if an employee “exercises any right to a *113 smoke-free environment afforded by the regulation.” Accordingly, under Dudewicz, the Suchodolski exceptions do not apply because there is no need for a public policy exception if a statute, or, as here, a regulation, prohibits discharge in retaliation for the conduct at issue. While I do not believe those parts of the regulation that create a private cause of action are valid, Justice Cavanagh and the majority take a different view. If valid, they provide all the remedy that is needed and no cumulative Suchodolski exception exists under Dudewicz. And, even though I would hold those parts of the regulation prohibiting a retaliatory discharge invalid, it is still possible, indeed likely, that those parts of the regulation promising an employee a smoke-free environment may be enforceable pursuant to the WPA. Finally, Justice Cavanagh’s citation oi Humenny v Genex Corp, 390 F3d 901 (CA 6, 2004), in support of his claim that Dudewicz only limits the first Suchodolski exception when the statute (or regulation) provides “an exclusive remedy for violation of that explicit prohibition” is inapt. The actual holding of Humenny is that the first issue that must be addressed in considering a public policy claim is whether the plaintiff has identified a well-established legislative enactment that addresses the particular conduct at issue. Id. at 907. This is correct. Humenny also stated that if the cited statute (or regulation) does not address the particular conduct at issue, there is no need to reach the question whether the statute “provides a remedy to plaintiffs.” Id. Again, this is correct. And, I note that Humenny used the phrase “provides a remedy,” not “provides an exclusive remedy.” There simply is no language in Humenny that purports to hold that that Dudewicz only limits the first Suchodolski exception when the statute (or regulation) provides “an exclusive remedy for violation of that explicit prohibition.” Ante at 90-91 n 5 (emphasis added). To reiterate, Dudewicz limits the first Suchodolski exception whenever the cited statute (or regulation) provides a remedy of its own. Dudewicz, supra at 80. This is because a public policy remedy is obviously not needed when the cited statute or regulation provides a remedy of its own. Justice Cavanagh’s citation of Ohlsen v DST Industries, Inc, 111 Mich App 580, 586; 314 NW2d 699 (1981), does not support his claim that a cumulative “public policy” claim is allowable where the applicable statute supplies a non-exclusive remedy While Ohlsen observed that the remedy provided by the statute was exclusive, this is a far cry from saying that it would nonetheless have allowed a cumulative public policy claim if the statute had provided for a non-exclusive remedy Finally, Dudewicz noted that remedies provided by a statute for violation of a right having no common-law counterpart are generally exclusive, not cumulative. Dudewicz, supra at 78. There can be no dispute that the common law did not provide a right to a smoke-free work environment. Thus, the remedies available under §§ 1010(F) and 1012(F) of the regulation are properly character *114 ized as exclusive, and even under Justice Cavanagh’s reading of Dudewicz, a public policy claim is barred.

 See also Clifford v Cactus Drilling Corp, 419 Mich 356; 353 NW2d 469 (1984), in which this Court held that a public policy exception claim did not exist where an employer fired an employee for missing work on account of a work-related injury for which workers’ compensation benefits had been paid.

 Justice Cavanagh concludes that the regulation fits within the first Suchodolski exception, for adverse treatment of employees who act “in accordance with a legally recognized right or duty.” Ante at 89. However, I would point out that the Court of Appeals in Vagts, supra at 485, stated that Dudewicz “probably eliminated the first of the three grounds identified in Suchodolski.” As I will discuss later, to the extent the regulation may be enforceable through the Whistleblowers’ Protection Act (WPA), MCL 15.361 et seq., this is correct. That is, if the WTPA prohibits discharge in retaliation for the conduct at issue, Suchodolski does not even apply by the terms of Dudewicz. See also Shuttleworth v Riverside Osteopathic Hosp, 191 Mich App 25, 27-28; 477 NW2d 453 (1991), which held that the W(PA is the “exclusive remedy” available to an employee terminated for reporting to any public body a violation of any law or regulation of this state, a political subdivision, or the United States. Indeed, I note that Justice Cavanagh agrees that if the regulation is enforceable through the WPA, a “public policy” claim would not be allowed. Ante at 92 n 5. The majority states that the WPA does not negate the authority granted by the Legislature in the Public Health Code. Ante at 86. But, I have not argued that it does. Rather, I have argued that the Public Health Code does not countermand the general limitation of MCL 46.11(j) on a county board to act in derogation of the general laws of this state in non-health-related areas. See note 4 of this opinion.
The majority also states that the Legislature has authorized local health departments to enforce part 126 of the Public Health Code and rules promulgated under it by any “ ‘appropriate action authorized by law.’ ” Ante at 87, quoting MCL 333.12613(2). This is true, but we are *115 reviewing a local regulation that allows a private citizen to file a lawsuit. Given that county boards are only statutorily authorized to enact ordinances that include a fine of up to $500 and a term in jail of up to 90 days, MCL 46.10b, and the fact that the express mention of one thing in a statute generally implies the exclusion of similar things, a statute authorizing a local health department to enforce a regulation hardly constitutes authority for that department, acting in conjunction with a county board, to authorize a private citizen, rather than the health department, to enforce a regulation through a private lawsuit.

 Justice Cavanagh contends that “it is up to the Legislature to determine whether the benefits of local regulation outweigh the costs of a lack of statewide uniformity.” Ante at 94 n 7. However, he fails to consider that the Legislature has already done just that by having indicated that a county is only allowed to enact ordinances that “do not contravene the general laws of this state.” MCL 46.10b (emphasis added).

 Suchodolski cited two cases as examples of situations in which a plaintiff had been terminated in violation of a “well established” legislative enactment: Sventko v Kroger Co, 69 Mich App 644; 245 NW2d 151 (1976), and Hrab v Hayes-Albion Corp, 103 Mich App 90; 302 NW2d 606 (1981). Both of these cases involved workers’ compensation claims. There are few statutes that are as well established and known to employers as our Worker’s Compensation Disability Act, MCL 418.101 et seq.

 Const 1963, art 3, § 7, provides: “The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended or repealed.” As noted in Placek v Sterling Hts, 405 Mich 638, 656-657, 275 NW2d 511 (1979), this Court may develop the common law through its decisions. Justice CAVANAGH states that he would not “exclude laws enacted by local legislative bodies from the public-policy exception ....” Ante at 96. I believe it is more accurate to describe the majority as extending Suchodolski to encompass local regulations. Justice CAVANAGH acknowledges that the cases and statutes cited in Suchodolski included laws adopted by our Legislature, but claims that nothing in the opinion indicates the Court found that to be significant. Ante at 95 n 9.1 disagree. Suchodolski only identified statewide laws, and that Court’s use of the words “well-established legislative enactmentfs]” strongly suggests it was concerned with notice issues. This discussion, I believe, fairly communicates that local regulations would rarely be characterized as constituting “well-established legislative enactmentfs]” in the same manner as statewide enactments.

 Section 1016 of the regulation provides that if any provision, clause, sentence, or paragraph of the regulation shall be held invalid, such invalidity shall not affect the other provisions of the regulation and the provisions of the regulation that are declared invalid shall be severable.

 Indeed, we are advised that Charlevoix County, though it did not formally withdraw its ratification of the regulation, recently decided not to enforce the regulation. I do not know for certain, but I presume, that some or much of the impetus for this decision was a function of political and other related activities in that county.